## WILLIAM H. CLARK & others *vs.* JOHN H. DEARBORN.

One to whom the pledgee of goods has, with the pledgor's consent, consigned them for sale, can in his own name make demand, under the Gen. Sts. *c.* 123, §§ 62, 63, for payment of the amount for which they were pledged, upon an officer who has attached them on a writ against the pledgor; and, on refusal of the officer to pay the amount or release the attachment, can in his own name maintain an action against him for their conversion.

The lien of a pledgee covers freight paid by him on the goods pledged.

A demand, under the Gen. Sts. *c.* 123, §§ 62, 63, by one having a lien on property attached, is good, though made for an amount larger than is due, if the amount due exceeds the value of the property.

An officer who had paid freight due on property attached by him, afterwards, on the demand of a person who had a lien on the property for advances, refused either to pay the amount of the lien or to release the attachment. *Held,* that, in estimating damages, in an action by such person against the officer for conversion of the property, the sum paid for the freight must be deducted from the value of the property.

TORT against a deputy sheriff for conversion of a cargo of lumber, alleged to be property of the plaintiffs. Writ dated December 24, 1867. The answer denied every allegation in the declaration, and set up a special property in the lumber in the

defendant, by reason of his having attached it November 23 1867, on a writ in favor of Amos Pike against Edward A. Forbush, alleged to be the owner thereof.

At the trial in the superior court, before *Lord*, J., the plaintiffs introduced evidence tending to show that Forbush, living at Kinston, North Carolina, and being the owner of the lumber, sent it, on October 31, 1868, to Mitchell, Allen & Company, of Newbern in that state, to be held as " a pledge for a debt due August 20, 1868, and other indebtedness in their store account which they were then contracting," with authority to ship and sell the same; and that Mitchell, Allen & Company paid freight on the lumber from Kinston to Newbern. A bill of items, containing the particulars of indebtedness of Forbush to Mitchell, Allen & Company, was put into the case. This bill contained charges, amounting to $717, for a cotton press, gin and condenser; $350.59, for the " store account;" $95, " cost of well;" and $183.40, for the freight of the lumber from Kinston to Newbern.

The plaintiffs further introduced evidence tending to show that Mitchell, Allen & Company sent the lumber by vessel to Boston, consigned by bill of lading to the plaintiffs or assigns, with a letter of instructions directing the plaintiffs to sell it, and that the plaintiffs " took possession of the cargo on its arrival, and offered to pay the freight to the master of the vessel."

The defendant asked the judge to order a nonsuit, on the ground that the plaintiffs had shown no sufficient interest in the property to enable them to maintain an action in their own name; but the judge refused to do so.

It appeared that the defendant, as deputy sheriff, attached the lumber on November 23, 1867, as the property of Forbush, on a writ against him in favor of Amos Pike, and paid to the master of the vessel $600 for the freight from Kinston to Boston; that, on December 13, 1867, the plaintiffs notified the defendant in writing that the lumber was consigned to them for sale by Mitchell, Allen & Company, who had a lien thereon for the sum of $1245.99, due to them from Forbush, and for the freight; and that, as the defendant had paid the freight, they demanded pay-

ment of the said sum of $1245.99. It further appeared that the defendant did not comply with this demand, but retained possession of the lumber; that the action of Pike against Forbush was entered, and, as appeared by the record, proceedings were regularly had therein, and judgment ordered for Pike; and that, on February 6, 1868, within thirty days after the date of the judgment, the defendant in the present action caused the lumber to be sold on execution.

The defendant contended that the demand should have been made not by the plaintiffs, but by Mitchell, Allen & Company; and that the sum demanded was too large, because it included the freight on the lumber from Kinston to Newbern, and also the store account and the cost of the well, neither of which should have been included. The judge ruled that the freight was, as matter of law, properly included, and that " as to the other two items they were questions of fact to be determined by the jury."

The plaintiffs then offered evidence tending to show " that the attachment was a mere device by Pike to get possession of the property; that, as soon as the defendant got possession of the property, he abandoned the attachment and delivered the property to Pike, who took possession of it and caused it to be offered for sale and did actually sell it; and that the subsequent sale on execution was a mere form, the property having already been sold by Pike." The defendant denied this, and much evidence was offered on both sides. The judge then, " with con sent of counsel, submitted certain specific questions to the jury, which they answered, with the understanding that he would order such a verdict as the findings upon the questions required. Upon all the questions full instructions were given to the jury to which no objection was made." These questions and answers were as follows :

" Did the defendant make an attachment of the property, and did such attachment continue up to the time of selling on execution, and did he lawfully seize and sell the same on execution?" *Ans.* " No."

" Was the lumber in question pledged by Forbush to Mitchell, Allen & Company, and actually delivered to them on such pledge, with authority to send the same to Boston to a consignee of their selection ? " *Ans.* " Yes."

" Does the demand made by the plaintiffs upon the defendant contain a just and true account of the debt for which the lumber is claimed to have been pledged by Forbush to Mitchell, Allen & Company ? " *Ans.* " Yes."

" What was the value of the property at the time it was taken by the defendant, not deducting the amount of the freight ? " *Ans.* " $1300."

The judge ruled " that, under the findings of the jury, the defendant was a trespasser *ab initio,* and his payment of the freight was in his own wrong, no request having been made by the plaintiffs, or any one having the same interest with them, to him to pay it, they being willing and having offered to pay it; ordered a verdict for the plaintiffs for $1300; and reported the case to this court for its determination ; " if the verdict was right, judgment to be entered upon it; if the freight should have been deducted, the plaintiffs to remit $600; if the verdict was wrong, and the plaintiffs can recover in any event, the verdict to be set aside and a new trial granted; if the plaintiffs have no such title as to enable them to maintain an action, judgment to be entered for the defendant."

*W. W. Warren,* for the defendant.

*A. A. Ranney,* for the plaintiffs.

WELLS, J. There appears to be no dispute about most of the facts necessary for the decision of this case, namely: that Forbush was the general owner of the property sued for; that he was indebted to Mitchell, Allen & Company for advances or otherwise; that he consigned this lumber to them to secure that debt, " with authority to ship and sell the same ; " that Mitchell Allen & Company consigned it to the plaintiffs for sale on their account, and forwarded to them the bill of lading and their letter of instructions.

The consignment to Mitchell, Allen & Company gave them a special property in the lumber to the extent of their debt, com

missions and expenses, including freight. The terms and nature of the consignment implied a power of substitution by con signment, like that to the plaintiffs. It was accompanied by possession in Mitchell, Allen & Company; and their letter of instructions and the bill of lading gave to the plaintiffs the right of possession. *Primâ facie* that is sufficient to enable them to maintain an action for the possession, or for any injury to the goods. As against trespassers, and those showing no title or right, it is sufficient for all purposes. The only defence set up in the answer is the attachment made by the defendant as a deputy sheriff upon a writ against Forbush, and the proceedings in pursuance thereof. All those proceedings, from the attachment November 23, 1867, to the sale on execution February 6, 1868, within thirty days from the date of the judgment in that suit, are regular in form. No objection is made to them on the ground of any defect in the record. The justification of the officer is thus shown to be complete, unless the attachment was dissolved by the demand and neglect to pay the amount due upon the lien of Mitchell, Allen & Company; or unless he became a trespasser *ab initio*, by reason of the alleged abuse of his process. This action was commenced December 24, 1867. It is contended that the first special finding of the jury sustains the position of the plaintiffs, that the officer abandoned the attachment at once and delivered the property to Pike, and that the subsequent sale on execution was not a real sale, but only a cover for previous abuse of his authority under the attachment. If so, the officer would be liable as a trespasser *ab initio*. *Mc Gough* v. *Wellington*, 6 Allen, 505.

But the form of the question, to which the jury returned their answer, does not make it certain that they did find this fact to be as the plaintiffs contend. As the facts of attachment, and sale on execution within thirty days after judgment, were shown by the record, we may assume that the answer of the jury negatives the other proposition contained in the question: to wit, that the attachment continued up to the time of selling on execution. But that would be negatived, whether the attachment had been dissolved by the abuse of process by the officer, or by

demand and neglect to pay the amount due under the lien. It is necessary therefore to consider the effect of the third special finding of the jury, and the rulings of the court below in relation thereto.

Upon this question, we are of opinion, 1. that the plaintiffs were rightful holders of the property, entitled to receive the amount due to Mitchell, Allen & Company under their lien, and to make the necessary demand therefor; Gen. Sts. *c.* 123, §§ 62, 63 ; *Pettis* v. *Kellogg*, 7 Cush. 456 ; 2. that the court below correctly ruled that the freight upon the lumber, from Kinston to Newbern, paid by Mitchell, Allen & Company, was properly included in the amount claimed as due under that lien ; and 3. that the question whether the " store account" and the " cost of the well " were covered by the lien, or improperly included in the demand, was rightly left to the jury. *Harding* v. *Coburn*, 12 Met. 333. Besides, even if it were a question for the court, we think the jury have decided it rightly, upon the report as it stands, so far as the " store account" is concerned, and so the defendant has no ground of exception. The " cost of the well" was only $95. Deducting that from the whole amount demanded, the debt would still largely exceed the value of the property, as found by the jury, after deducting from the verdict the amount of the freight paid by the officer. It would thus be made to appear that the defendant was in no way prejudiced by the over-statement, if it were such. *Rowley* v. *Rice*, 10 Met. 7.

We are of opinion that the amount so paid for freight should be deducted from the verdict, in accordance with the terms of the reservation. There is nothing in the case to show that the lien for the freight was not in force when the property was attached. The jury have not found that it was not in force, and we cannot assume it from the statement in the report that the plaintiffs offered evidence tending to show that they " took possession of the cargo, and offered to pay the freight to the master of the vessel." The property was apparently subject to a lien for the freight, and its value should be estimated with reference to that condition of incumbrance. *Adams* v. *O'Connor*, 100 Mass. 515. If the jury have already made a reduction on that

account; or if they have improperly rendered a verdict of about the amount due under the lien, upon the supposition that no deduction would be made by the court; they have done so contrary to the instructions given them, and the remedy is to be sought by an application to that court for a new trial. There is no question raised by this report upon which we can consider the suggestions of the plaintiffs in that regard.

The plaintiffs were entitled to have interest added, in the assessment of their damages. But the attention of the judge does not appear to have been called to it; and the reservation does not permit us to sustain the verdict in their favor, otherwise than upon the condition that they remit $600, the sum fixed in the court below as the amount paid by the officer for the freight. The case will still be open there to any motion for a new trial. The order, now to be made, must be, that the plaintiffs are to remit $600 from the verdict, and to have judgment for the balance. *Ordered accordingly.*