GEORGE PATTEN, plaintiff in error, *vs.* JAMES BAGGS, defendant in error.

1. Where, in an action against a warehouseman by one who claims to have purchased certain cotton stored in the warehouse by a third person, it appeared that the cotton was sold by a written invoice and bill of sale, the writing is the best evidence of the contract of sale and of the title to the cotton and parol evidence of the sale will not be received unless the writing be accounted for.

2. Where a warehouseman is sued in trover by one who claims to be the

assignee of his receipt for a number of bales of cotton, it is not suffi-
cient evidence of the conversion to show that the defendant refused to
deliver the cotton to claimant until the receipt was produced or good
security given to indemnify the warehouseman.

3. The mere statement by the warehouseman to the claimant that he
*believed* him to be the true owner, accompanied by the additional
statement that he had been notified of another claimant, and was un-
willing to give up the cotton until the receipt was produced or bond
given, is not such an admission that the claimant is the true owner as
to estop the warehouseman, and relieve the plaintiff from the neces-
sity of showing title.

4. In an action of trover against a warehouseman by the assignee of his
receipt for certain bales of cotton, which receipt was to deliver the
cotton to the bailee or his order, it is necessary for the plaintiff not
only to produce the receipt or account for its loss, but to prove the
execution of the assignment.

5. A cause dismissed for want of prosecution will be reinstated if the
absence of counsel for plaintiff in error was caused by sickness. (R.
See end of Report.)

6. A bill of exceptions defective under the rules of the Supreme Court
was cured by the Act of 1870, passed after said cause was sent up to
this Court. (R.  See end of Report).

Evidence.  Bailment.  Estoppel.  Practice Supreme Court.
Before Judge CLARK.  Mitchell Superior Court.  June, 1870.

This was trover, for certain cotton, by Patten against Baggs.
One Stephens testified that in 1862 he sold thirty-nine bales
of cotton to A. J. Hull, and gave Hull a writing describing
the cotton, and agreeing to hold it subject to Hull's order,
and that subsequently he stored it in Baggs' warehouse, by
Hull's order.  Plaintiff's counsel next offered in evidence
Stephens' said obligation to Hull, indorsed in blank by Hull.
They next offered in evidence the interrogatories of one
Bloom, who answered that he was present in the early part
of 1864, when D. H. Baldwin sold to Adam Griffin thirty-
nine bales of cotton, said to be stored in Bagg's warehouse,
for which Baldwin had Bagg's warehouse receipt, and gave
Griffin a written conveyance of said cotton.  The Court ruled
out this and other evidence of Bloom, because said receipt
was not produced nor its absence accounted for.  Bloom tes-

tified that he subsequently bought said cotton from Griffin for one Schlatter. Schlatter's written conveyance of the cotton to plaintiff was shown. Plaintiff's son testified that in October, 1865, and at several other times prior to the suit, he demanded the cotton of Baggs, stating that the original receipt was lost; that Baggs told him that he did not doubt that the cotton was his father's, but that he could not deliver it in the absence of his warehouse receipt, because Bloom had told him not to do so, and refused, although he was offerred a satisfactory bond of indemnity. Plaintiff showed that Stephens' obligation to Hull had been in Bloom's or Griffin's possession, and showed the value of the cotton.

For the defendant, Rust testified that, at the instance of Bloom, in April, 1865, he notified Baggs not to deliver the cotton, because Bloom claimed it for the Brunswick Railroad Company, and said the warehouse receipt was lost.

Baggs testified, that when Patten demanded the cotton, he told him that he would not deliver it without his warehouse receipt, because Bloom claimed it to belong to the Brunswick Railroad Company; that Patten said the receipt was lost, whereupon he offered to deliver it upon such a bond of indemnity as Mr. Smith, an attorney at law, would approve; said he was anxious to deliver it to the proper owner. Patten agreed to give the bond, but did not. Subsequently, without his connivance and against his consent, the United States Treasury agents seized the cotton and carried it away, saying it belonged to the Confederate States. Patten spent much time and money in trying to reclaim it, but failed to get it or pay for it.

Smith testified that Patten told him of the difficulty and got him to draw a bond of indemnity, and had it signed, but the sureties were not good and he refused it on that account, and Patten never gave or offered any other. This evidence of Baggs and Smith, as to the indemnity bond, was objected to, because it was things done in a treaty for compromise. The objection was overruled. Defendant showed the seizure

of said cotton, and his efforts to reclaim it, as aforesaid, and closed.

The Court charged the jury : If plaintiff had showed his title to said cotton he should recover, unless defendant showed a legal reason to the contrary.  If defendant converted the cotton to his own use, or sought to do so, and, pending the conversion, or afterwards, it was seized by the United States, he is liable for its value.  If defendant had notice of a defect in plaintiff's title, or of another outstanding title, or such notice as to cast serious doubts upon plaintiff's title, he had the right to refuse to deliver the cotton until the original receipt was produced, or plaintiff had indemnified him in some way against the claims of others.  If plaintiff did not produce the original receipt or indemnify defendant, and defendant, to protect himself, *bona fide*, held the cotton, setting up no claim in himself, but to find out the true owner, and while he so held it such seizure occurred, he would not be liable.  If defendant's refusal to deliver was captious, or if he set up a claim for himself, or wrongfully delayed plaintiff, or so acted as to defeat or retard plaintiff in getting possession, such acts would amount to a conversion, etc.  The jury found for the defendant.

Plaintiff's counsel moved for a new trial, upon the grounds that the Court erred in ruling out said evidence of Bloom, and in allowing that of Baggs and Smith, objected to, as aforesaid, and in charging as aforesaid, and because the verdict was contrary to the evidence, etc.  By amendment they added, that they were surprised by Baggs' and Smith's evidence as to the failure to give the indemnity; stated that Young Patten did offer any kind of indemnity, and that the plaintiff did not attend Court because of his great distance from it, and family afflictions, and therefore they did not know this till after the trial, and that counsel did not know this fact till after trial.  The Court refused a new trial, and error is assigned on each of said grounds.

When this cause was called, it was dismissed for want of

Patten *vs.* Baggs.

prosecution. It was reinstated upon counsel for plaintiff in error stating, in his place, that his absence was caused by his sickness.

The papers came here in this shape: First, the declaration, etc., then a motion for new trial, then the bill of exceptions, without the evidence being embodied in it, then a brief of evidence, agreed to by counsel, on which was a marginal note, purporting to be a correction by the Judge, but not signed by him, then the usual certificate; after it, a certificate that the brief of evidence was correct, and last, a certificate by the Clerk, that the bill of exceptions was the true original, and that the record was a complete transcript, etc.

The bill of exceptions did not allude to any brief of evidence; it did not appear to have been attached to the bill of exceptions when it was tendered to the Judge, and he did not certify *on* the brief that it was the one to which his certificate had reference. After the cause was reinstated, counsel moved to dismiss it, because the evidence was not in the bill of exceptions, nor attached to it and identified by the Judge. It was replied, that the Act of 1870 saved the cause, though it came up before said Act was passed. And the Court overruled the motion.

H. MORGAN, for plaintiff in error. As to excluding Bloom's evidence: 1 Gr. Ev., secs. 86, 87, 88, 89, 90; 11 Wend. R., 667; 10 John. R., 448; 17 Mass. R., 165; 2 Phil. Ev., 363; Cowen & H's notes, 860; 1 East.'s R., 227; R. Code, sec. 3754; 1 Ga. R., 18; 3d, 215; 38th, 554. As to negotiations for compromise not being evidence: Dudley's Ga. R., 218; 6 Ga. R., 213. The notice to Baggs did not justify his refusal to deliver: Story on B., secs. 450, 818; on Agency, sec. 217; 2 Eq. Juris., sec. 817; 2 B. & Ald., 313, 314; 5 Madd. R., 47; 2 Russ. & M. R., 606, 609, 610, 612; 1 Tamlyn's R., 177, 181, 182; 4 Sim. R., 218; 7th, 391; 1 Cowen's R., 691, 692; 2 Stark. R., 400; 7 Bingham, 339.

STROZIER & SMITH, for defendant.

McCay, Judge.

1. This was an action of trover for thirty-nine bales of cotton, against Baggs, a warehouseman, by Patten, who sues as a purchaser of the cotton through several intermediate vendees, from Hull, the original bailor of the cotton. Waiving the question (which is not by any means clear) whether any one but the original bailor can sue until the bailee has accepted the vendee as his bailor, it is undoubtedly true, that the vendee must make out a clear title. The bailee is not to be made chargeable to a third person, with the least doubt as to his liability to be called upon by somebody else. A judgment in favor of Patten would be no bar to a suit by Hull, or by anybody else who could show the cotton was his.

It is, therefore, of special importance that, in making out his case, the plaintiff should be required to produce the best evidence possible of his right. He does not produce Baggs' receipt, in which the cotton is described by marks and weights, but undertakes to show by Bloom, that Baldwin sold the cotton to Griffin, and that Baldwin had then Baggs' warehouse receipt. He does not say who the receipt was given to. Bloom further says that this sale from Baldwin to Griffin was by written invoice. We think the Court was right in requiring this invoice to be produced.

One of the first requisites to a valid sale is the identification of the property: Revised Code, section 2587. One bale of cotton is very much like another. Baldwin might have had several receipts of Baggs', given to different persons for cotton. How was the jury to know that it was the Hull cotton that was sold? The production of the invoice would show. As is the custom with cotton dealers, this invoice would have given the marks upon the cotton, and most probably the weights, so that it could be seen if this was the Hull cotton. It was a material link in the chain of the plaintiff's title.

We do not say that in all cases where personal property

is sold, and a bill of sale is *written* the bill of sale, is the only mode of proving the transaction. Ordinarily the title to personal property passes by delivery. But in a case like this, when there is no delivery, and where the suit is by a vendee, from the bailor, against the bailee, the title depends almost exclusively upon the writing; because by that only can the property be identified. To permit thirty-nine bales of cotton, in a warehouse, with perhaps thousands of other bales, to be sold one hundred miles away, and the marks and brands identified by parol, when it appears affirmatively that it can be done by the production of a paper, executed at the time, would be, as it seems to us, a violation of principle.

2. A warehouseman occupies a peculiar position. Assuming that the cotton he has in charge may be sold to a third person by the mere indorsement of the warehouse receipt, is it not very clear that he has a right to require any one claiming the cotton to produce his receipt? Has he not a right to require of the claimant the same evidence as the maker of a promissory note has before he pays it? It is admitted here that Baggs' receipt was to deliver the cotton to Hull's order, and it is not pretended that Hull ever did more than indorse the receipt in *blank*. We think the warehouseman had a perfect right to demand either the receipt or indemnity of any person claiming to be the purchaser of the cotton, and that his refusal to deliver without some protection of this kind did not, *per se*, make a conversion. But it is said the receipt is traced to his (Baggs') own custody, that he acknowledged Patten to be the true owner, and that he is, consequently, estopped from denying it.

We recognize the rule that, in general, a bailee cannot deny the title of his bailor, and that the recognition of a vendee of the bailor as the owner, puts the bailee in the same position, as to the vendee, as he was to the original bailor : Story on Agency, section 217 ; 1 Cowen, 691 ; Story on Bailment, sections 818, 452. Though perhaps this doctrine

is in this State to be qualified by section 2050 of our Code, so far as to permit the bailee to do this, if there is an outstanding title *actually being enforced against him.*

But we think the Court, in his charge to the jury, on this question, put the law rightly. He told them that it was a question of good faith, on the part of the bailee. His acknowledgment of the right of Patten, and his acceptance of him as the bailor, was a qualified one at the time. It was, perhaps only fairly—a mere courtesy. "I do not doubt your word, but I am not safe with my receipt out. Bring me my receipt or indemnify me." He set up no outside title. He did not admit Patten to be the bailor. It was, at least, a mere statement, to the effect that Patten seemed to be the owner, but that his title was defective. We do not think this evidence amounted to such a recognition of Patten as made him Patten's bailee, so as to estop Baggs from requiring Patten to show title, and we hold that the rule referred to does control this case.

Without doubt, if the receipt was *really* in Baggs' custody, indorsed by Hull, it was very unfair for Baggs to insist on its production. But that was not clearly made out by Cook. Both Baggs and Allen deny it, and the Court left this fairly to the jury, when he said to them, that Baggs' refusal to deliver to Patten until the receipt was produced, etc., must be *bona fide,* and be only a prudent act upon his part, for his own protection. If the receipt, indorsed by Hull, was already in his possession, his excuse was a mere subterfuge, and, under the charge of the Court, his refusal was tortious and a conversion. But we think the evidence, that Baggs had the receipt, is not at all conclusive. There were two receipts—one given by the planter to Hull, and one given by Baggs to Hull; and we think the inference is strong that Cook refers to the planter's receipt, which was produced on the trial.

Especially does it fail to appear that Hull ever *indorsed Baggs' receipt* to anybody. This was a *sine qua non,* in the

plaintiff's case. It is admitted that, by its terms, it was to Hull or his order. Could Baggs safely deliver without this order? Even if the receipt had been present, could the plaintiff get along without proof, on the trial, that the indorsement was genuine?

We think the Court was right in his charge. It was a question of good faith on the part of Baggs, and the jury have found in his favor. As to the seizure of the cotton by the military, it would be very hard to hold the warehouseman liable. He did his best, acted with extraordinary diligence. Upon the whole, we think it only fair that the contest between the United States and these parties, over this cotton, ought not to be cast on Baggs.

Judgment affirmed.