JOHN G. TYUS, plaintiff in error, *vs.* Y. G. RUST, defendant in error.

This was an action brought by the plaintiff against the defendant, as a warehouseman, to recovey the value of fifty-two bales of cotton, which the plaintiff alleges were sold and converted by the defendant contrary to his instructions, and without his authority. The evidence on this main point in the case was conflicting. The jury found a verdict for the defendant, and the plaintiff made a motion for a new trial on several grounds, which was overruled by the Court, and the defendant excepted:

*Held*, That taking the whole charge of the Court to the jury as to the defendant's liabilty under the law applicable to the facts of the case, as disclosed by the record, there was no error in that charge:

*Held further*, That although there may have been a preponderance of

evidence on the part of the plaintiff, still, it was a question for the jury to determine as to the credibility and weight which they would give to the evidence of the respective witnesses sworn in the case, and there being sufficient evidence to sustain the verdict, this Court will not disturb it. This is a Court alone for the correction of legal errors, and it will not usurp the functions of the juries of the country, in deciding upon the weight and credit to which the testimony of witnesses, sworn on the trial, are entitled to receive in determining questions of fact, when no rule of law has been violated; and this we have earnestly endeavored to impress on the minds of parties and their counsel, by the repeated rulings of the Court.

Bailment. Evidence, etc. Warehousemen. Factors. Before Judge HARRELL. Dougherty Superior Court. March, 1871.

Tyus brought trover against Rust for certain bales of cotton. On the trial the following facts appeared, about which there was no controversy. Sims & Rust were warehousemen and commission merchants, and had usually sold Tyus' cotton for him. In the winter of 1862–3, Tyus was moving from the county, and delivered said cotton to them and took their warehouse receipt therefor, in which it was stated that the cotton was "subject to this receipt or his order, on paying customary charges and all advances." They then let Tyus have $1,000 00. One Collins was present when the cotton was delivered and the money taken. Cotton was then worth fourteen cents per pound; Tyus said he would not sell till he could get eighteen cents per pound, and Sims & Rust did sell it in March 1863, for nineteen and half cents per pound. Sims died. Tyus demanded this cotton from Rust, and, on his failure to deliver it, sued him.

Collins testified that Tyus told Rust that he did not wish to sell because cotton was too low, but wanted $1,000 00, and would leave Collins as his agent, and if Rust needed the $1,000 00 before the cotton was sold to let him know and he would repay it, even if it rendered a sale of the cotton necessary; he did not hear Tyus authorize Rust to sell the cotton, but did hear him tell Rust that he, Collins, was his

agent to control the cotton. Tyus told Collins to sell if he could get eighteen cents per pound, and Collins did try to sell at that price, but failed.

Tyrus testified that he told Rust that he wished to store his cotton, as he was leaving the county. He said when he got the $1,000 00 it was not as an advance on the cotton, but was borrowed by his telling Rust that Collins would sell Tyus' corn and repay it and if Collins failed and Rust needed the money and would notify him he would repay him, even if he had to sell cotton. He said Collins heard all this. At the time of storing he owed Sims & Rust $300 00. Further, he said that in May, 1863, Collins tendered Rust the $1,000 00, and demanded the cotton, but he said Tyus owed him nothing, but that he had a balance due Tyus, and that he could not deliver because of said sale. But he said Rust admitted he had no authority to sell.

Rust testified that Tyus told him to sell his cotton at eighteen cents, and got an advance of $1,000 00 on it; all said and done in presence of Collins, and Rust understood that Collins was only authorized to receive proceeds when the sale might occur. He did not sell to pay said advance, but in obedience to said instructions. He denied that any offer had been made of storage, or advances or other thing before this suit was brought, and denied that anything was said about selling corn to pay the $1,000 00.

For requests to charge, and the charge as given, see the motion for new trial. There was a verdict for defendant. Plaintiff moved for a new trial upon the following grounds:

1st. That the Court erred in charging the jury that before plaintiff could recover he must show that he paid the charges for storage and advances, or tendered the money for said charges and advances.

2d. That the Court erred in charging the jury that if the defendant received the cotton as a warehouseman, or as a factor and commission merchant, or as a special bailee, he was entitled to retain the same until the charges which had

accrued thereon, up to the time of the demand, were paid or tendered by plaintiffs.

3. That the Court erred in charging the jury under the facts in this case, that if the cotton in dispute was delivered to defendant as a warehouseman, he had no right to sell it, but if it was delivered to defendant as a factor, he had a right to sell the cotton to cover the charges and advances, without charging that his right to sell was only to sell enough of the cotton to pay the charges and advances, and before doing this it was his, defendant's, duty to notify plaintiff of his demands for charges and advances and that, unless they were paid, he should be compelled to reimburse himself by a sale of a sufficient portion of the cotton.

4. That the Court erred in charging the jury, as requested by counsel for defendant, that the plaintiff is not entitled to recover the cotton from the defendant, or any other thing in lieu thereof by way of damages—if at the time of the commencement of this suit, there were any sum or sums due defendant for advances made by Sims & Rust to said plaintiff, or for expenses and storage on said cotton, unless the plaintiff had, prior to the commencement of said suit, paid said amounts, or offered to do so, unless he converted said cotton without or against instructions from the plaintiff.

5. The Court erred in refusing to give the following charge as requested by plaintiff's counsel, but in qualifying the same as follows: (Charge requested.) "If they, the jury, believe from the evidence that plaintiff delivered the cotton (the cotton sued for) for storage, and not for sale, they must find for plaintiff." (Qualified by the Judge.) "If, at the time plaintiff demanded the cotton, he paid the account of charges, or tendered them."

6. The jury found contrary to the charge of the Court. The Court charged the jury that it made no difference in what capacity the defendant received the cotton, whether as warehouseman, commission merchant, factor or special bailee, if he disobeyed the instructions of Tyus, the plaintiff, and

Tyus *vs.* Rust.

sold the cotton, and converted the proceeds to his own use, (whether Tyus had paid said charges or not) he is liable, and they should find in favor of plaintiff.

7. The jury found contrary to the following charges requested by plaintiff and given by the Court : 1. A delivery of cotton to a warehouseman gives the warehouseman no authority to sell, unless specially authorized to do so. 2. If Tyus empowered Collins, in the presence of Rust, to sell the cotton, that was no authority to *Rust* to sell. 3. If the receipts do not contain authority to sell, then the defendant must prove an authority by plaintiff to defendant, to sell. 4. A power given to Collins to sell, is not sufficient to authorize a sale by Rust. 5. A factor has no power to sell without authority of his principal, unless it is for the purpose of covering advances or charges, and then only a sufficiency to cover such advances. 6. If at the time of the deposit of said cotton, Tyus borrowed $1,000 00 from Rust, and it was not connected with the cotton, but an independent contract, Rust had no lien upon the cotton for its payment. 7. If a warehouseman has a lien for advances made, then he can only sell such portion of the goods as will satisfy his advance, and no more ; but if he should sell the whole amount of the goods, then it is a trespass *ab initio*, and he cannot set up the advancement as an excuse for a non delivery of the goods. 8. If Rust sold the cotton without instructions from his principal, he did so at his peril, and he is liable to the plaintiff, whether he made a mistake *mala fide* or *bona fide*. 9. The measure of damages is the highest price of such cottons in the Albany market since conversion and up to the time of suit. (See Code, 3010.)

8. That the jury found contrary to the charge of the Court in this—the Court charged that if Rust sold the cotton under the instructions of Tyus, they should find for defendant, but if, without or against instructions, they should find for plaintiff.

9. The defendant's counsel requested the Court to charge,

that, while the jury are at liberty, under the law, to disregard the testimony of either of the parties, or to believe the one and not the other, yet they cannot so regard or treat the testimony of a disinterested witness or third person, and if the testimony of either of the parties is sustained and corroborated by the evidence of such person and disinterested witness, and the testimony of the other is in conflict with the evidence of such third person, then the jury should give credit to the testimony of such of the parties as should be sustained and corroborated rather than to the other in conflict with such disinterested witness, which charge the Court gave with the following qualifications:

"That the jury must look to the circumstances and interest of all the witnesses, and decide upon the weight of testimony according to the conviction of their judgments upon a consideration of the whole evidence."

And the jury found contrary to said charge, as the testimony of Collins contradicted the testimony of Rust, and sustains and corroborates that of Tyus.

10. Because the Court erred in permitting Y. G. Rust to prove, by his own oath, over the objection of plaintiff's counsel, that at the time of the deposit of the cotton and contemporaneous with the receipt, plaintiff directed him, defendant, to sell the cotton. To which evidence plaintiff objected. 1st. Because it varied and contradicted the receipt. 2d. Because the warehouse receipt was a contract in writing, and all negotiations were merged in the receipt, and could not be introduced to vary, add to, or contradict said contract—which objection the Court overruled, and admitted the evidence.

11. Because the jury found contrary to the charge of the Court, contrary to the evidence, and the weight of evidence, contrary to law, in violation of law, and without law or evidence.

The Court refused a new trial, and that is assigned as error. (The judge certified that charge numbers one and

two are to be taken in connection with the last clause of number four and the charge specified in number six.)

WILLIAM E. SMITH ; H. MORGAN, for plaintiff in error.

VASON & DAVIS; R. F. LYON, for defendant.

WARNER, Judge.

Let the judgment of the Court below overruling the motion for a new trial in this case be affirmed.