## THE NATIONAL EXCHANGE BANK OF AUGUSTA *vs.* THE GRANITEVILLE MANUFACTURING COMPANY.

Where a factor, warehouseman and commission merchant who had in his warehouse certain cotton belonging to a customer, on which he had made advances and on which he claimed a factor's lien, transferred and constructively delivered, by warehouse receipt in usual form, not his lien, but the cotton itself, to a bank, as a pawn or pledge for the payment of a certain sum advanced by the bank to him, the cotton not being removed from the actual custody of the warehouseman or its location changed, the bank had neither title to the cotton nor such possession as would give it the right to maintain an action of trover against a *bona fide* purchaser who subsequently bought, paid for, took possession of and removed the cotton without notice of the pledge made by the factor to the bank.

March 31, 1887.

Title. Pawns. Factors. Vendor and Purchaser. Liens. Trover. Before Judge RONEY. Richmond Superior Court. October Term, 1886.

The National Exchange Bank of Augusta brought trover against the Graniteville Manufacturing Company to recover twenty-six bales of cotton. The case was submitted to the presiding judge without a jury. The following facts, in brief, appeared: Mobley & Company, who were customers of Stovall, a cotton factor and warehouseman, sent the cotton to Stovall, who obtained certain advances on it from the bank, and as collateral security gave a warehouse receipt, acknowledging receipt of the cotton from the cashier, with marks, etc. as stated in the margin, "subject to this receipt or his order." He also gave a note for $1,500 principal, dated December 30, 1884, which seems to have been renewed, and which contained the following clause:

"Having deposited with and pledged to said bank (being possessed of a legal right to make said deposit and pledge) as collateral security for the payment thereof, cotton as per warehouse receipt attached, which cotton, or any part or portion thereof, I hereby authorize said bank or its cashier to sell without notice at public or private sale, at the option of the bank, or its cashier, in case of the nonpayment of the above promise, applying the net proceeds to the payment of this note, with protest fee, including interest at the rate of 8 per cent. per annum, and counsel fee of ten per cent. and all expenses incurred, and accounting to me for the surplus, if any."

No change in the actual possession of the cotton was made. Mobley & Co. were indebted to Stovall $1.172. On March 24, 1885, they wrote to Stovall to sell what cotton they had whenever ten and three-fourths cents per pound could be obtained for it. On March 28, Stovall sold the cotton to the Graniteville Manufacturing Co. for the aggregate price of $1,389.22. The purchaser bought without knowledge of the claim of the bank. Whether the proceeds were transmitted to Mobley & Co. did not clearly appear. The price paid was the market price. The bank never authorized or ratified the sale, but on the discovery of it, made demand on the manufacturing company, and on its refusal to deliver, brought this action.

The presiding judge rendered judgment in favor of the defendant, and the plaintiff excepted.

Foster & Lamar, for plaintiff in error.

Harper & Bro. for defendant.

Hall, Justice.

M. A. Stovall, a factor, warehouseman and commission merchant, transferred and constructively delivered, by warehouse receipt in the usual form, twenty-six bales of cotton to the National Exchange Bank of Augusta, as a pawn or pledge for the payment of a certain sum advanced by the bank to said Stovall. This cotton belonged to a customer of the warehouse, and was never removed from the actual custody of the warehouseman, or its location changed. Stovall had made advances on it for which he claimed a factor's lien. The cotton thus pledged or pawned was subsequently bought, paid for, taken possession of and removed by the Graniteville Manufacturing Company, who had no notice of the pledge made by Stovall to the bank. The bank brought trover against the manufacturing company for the recovery of this property, and upon the trial, the defendant in the action of trover had a verdict, which was rendered by the judge on an agreed statement of facts, without the intervention of a jury. From that judgment this writ of error is prosecuted.

Various questions have been made and argued before this court, but the only one which we find it necessary to determine is, whether the plaintiff, as pawnee or pledgee, had obtained by that transaction such a title as would enable it to recover in trover against a *bona fide* purchaser for value and without notice, either actual or constructive, of its claim or lien. Whether this transaction amounted to a complete pledge or pawn, consummated by the delivery of such possession to the pawnee as the article pledged was capable of, we deem it unnecessary to determine as between the parties to such pledge. The code, §2138, makes

the delivery of the property pledged essential to the bailment, declaring further that promissory notes and evidences of debt may be delivered in pledge, but providing in express terms that the delivery of title deeds shall create no pledge. In *The First National Bank of Macon vs. Nelson & Co.*, 38 *Ga*. 391, this court held that an agent for the sale of goods could not, as against the owner, pledge or mortgage them to a third party to secure advances made on his own account; and that to constitute a pledge or pawn, under the code, there must be a deposit of the thing pawned, and that this cannot be dispensed with by a written agreement that the party making the pledge will be the bailee of the pawnee. This section of the code is considered and passed upon in this case, with the result above announced (pages 398–402), in an able judgment pronounced by McCay, J. It should be remembered, too, that this was laid down in a suit between the owner of the goods and the pawnee. In that case, however, there does not appear to have been any advance made by the factor upon the goods pledged, and that circumstance distinguishes it somewhat from the case under consideration. That this pawn, if perfected by delivery, and if the pawner had the title to the property and the right to pledge it, created a lien in favor of the pawnee for the money he advanced when it was thus pawned, is clear, but the pawn did not convey title to the pawnee. (Code, §2141.) It is also true the pawnee, if he had possession, might transfer his debt and with it the possession of the thing pawned; and in that case, the transferee from him would stand precisely in his situation. (*Id*. §2143.) That the warehouseman who made this pawn had a lien upon the property pledged for his advances, and that he might transfer that lien, is unquestioned; but in order to make that transfer of the lien effectual in the hands of the transferee, the assignment had to be made in writing, and it could not be made otherwise. See code, §1996, and citations. There was, however, no attempt made by Stovall to pledge or pawn

anything but the property itself. The defendant, the Graniteville Manufacturing Company, found the cotton in the warehouse, and purchased it without notice of any of these incumbrances. It had no notice of any actual or visible change of the possession of the property from the pawner to the pawnee. And although the plaintiff might, in equity, have succeeded to the lien of the pawner upon the property, yet the defendant was a *bona fide* purchaser of the goods claimed to be pledged, for value, without notice, or without any circumstances being brought to its notice which should have put it upon inquiry.

In *Frazer vs. Jackson*, 46 *Ga.* 621, this court held that a *bona fide* purchaser of the absolute title to personal property, without notice of any unforeclosed statutory lien upon it, takes the same divested of any such lien; that our statutory lien laws secure priority of judgment to favored classes of debts out of certain property of the person who incurred the debts. But when such property passes into the hands of a *bona fide* purchaser without notice and before foreclosure, it is no longer the property of the person incurring the debt, and not having gone into the possession of one affected with notice, the lien is lost. The same principle is announced and adjudged in *Beall vs. Butler*, 54 *Ga.* 43.

But even if this had been a valid transfer of Stovall's lien to the plaintiff, we do not think that it could have maintained trover against the defendant for the recovery of the property. No title was conveyed to the plaintiff by this transaction. To enable the plaintiff to maintain trover, he must have either a general or special property in the chattel, and the actual possession or the right of possession. It is questionable, to say the least, if this is not one of the cases in which actual possession is essential to create such special property in the thing pawned as to entitle the plaintiff in any case to maintain this action. The general property in the goods pawned remains in the pawner, but the pawnee has a special prop-

erty for the purposes of the bailment. Code, §2142. And this special property gives him a right of action against any one interfering with his possession. *Id.* §2141. It is undeniably true that trover is founded on a conjoint right of property and possession, and that any act of the defendant which negatives or is inconsistent with such right, amounts in law to a conversion. *Liptrot, administrator, vs. Holmes,* 1 *Kelly,* 381.

The plaintiff in this case had neither title nor such possession as that which the law contemplates when the defendant, by a fair sale, acquired the property, and as would give the right to maintain this suit. There was no error in holding that the action, under these circumstances, could not be maintained.

It is perhaps necessary to remark that we have purposely abstained from considering any other questions than such as were essential to the final disposition of the case made upon the record. Although invoked to do so, we must respectfully decline, as we do not conceive that we have the authority to respond to such an invitation.

The following authorities are cited in the brief of counsel for the plaintiff in error:

38 *Ga.* 391, 402; 65 *Id.* 348; 69 *Id.* 451; 67 *Id.* 24; 34 *Id.* 225; 43 *Id.* 173; 53 *Id.* 36; 57 *Id.* 410; Story on Bailments, §297 (6 ed. 272); citing 2 Term R. 462; 12 Mass. 300; 1 Pick. 389, 396; 20 Pick. 405; 9 Pick. 347, 349; 61 Am. Decis. 481; 96 U. S. 477; Colebrook on Collateral Securities, §420, p. 565; citing 48 Mich. 118; 13 Bush, 495; 10 Bush, 419; 79 Ill. 305; 66 Ill. 270; 54 N. Y. 18–21; 8 Col. 614; 19 Ohio St. 424; 29 Wis. 24, 43; Story on Bailments, §299, p. 274 (6 ed.); 14 Pick. 497, 505, 509; 1 Sandford, 248; Colebrook on Collateral Sec. 558, 531; Code, §§2139, 3030, 2141, 2059, 2091, 2129, 2094; 2 Addison on Torts, 1292, 692; 1 Am. Rep. 137; 12 Cush. 19; 42 Am. Rep. 465; 7 *Ga.* 530, 534; 8 Howard, 399; 43 *Ga.* 173; 13 Bush. 495; 20 Reporter, 625; 6 Ver. 400; 29 Wis. 42, 44; 54 *Ga.* 114; 1 Smith

L. C. 696, 701, 702, 703, 704; 62 *Ga.* 394; 73 *Id.* 472; 54 *Id.* 689; 19 *Id.* 333; 55 *Id.* 613; 77 Am. Decis. 649; 38 Miss. 359; Code, §2111; 11 Howard, 225–6; 5 T. R. 604; 6 East, 538; 7 East, 5; 3 Chitty Com. Law, 193; Colebrook Col. Sec. §409, p. 550, citing 78 Ky. 42; L. R. 1 Q. B. 599; 15 C. B. (N. S.) 330; 13 Mich. 267; 6 Allen, 246; 103 Mass. 335; 105 Mass. 267; 78 Ill. 449; 5 H. & N. 287; 17 Q. B. 937; L. R. 3 Ex. 299; 66 Am. Decis. 755; 60 *Ga.* 600; 55 *Id.* 53; 54 *Id.* 114, 115; Colebrook Col. Sec. §409; Code, §§2143, §2112; 43 *Ga.* 529, 533; 42 *Id.* 556; 1 Benj. Sales, 13, 29, 30; 38 *Ga.* 398; Code, §2639; 46 *Ga.* 230–1; *Id.* 210; 58 *Id.* 63; 54 *Id.* 74; 14 *Id.* 185; 8 *Id.* 530.

Cited in brief for defendant in error :

38 *Ga.* 391; 120 U. S. 20 ; Story on Agency, §224, 225, 389; 10 Am. Decis. 641; Story on Law Sales, §104; Jones on Pledges, §§329–330 ; §26; Code, §2138; *Davis vs. Meyer*, S. C. Arkansas, June 19, 1886 (S. W. Rep. vol. 1, no. 2, p. 95); Code, §1593; 46 *Ga.* 621; 54 *Id.* 43; 5 *Id.* 153 ; 73 *Id.* 418 ; Story on Agency, §§87, 93, 94; Add. on Cont. vol. 2, §547; 54 Am. Rep. 770; 31 N. Y. 507; 25 N. Y. 278; Jones on Pledges, §47; Code, §2189; 72 *Ga.* 39; Add. Torts. vol. 1, §537; Code, §2204; Greenl. Ev. vol. 2, 307.

Judgment affirmed.