CASE 47—PETITION EQUITY—JANUARY 18.

# Alexander & Co. vs. Springfield Bank.

APPEAL FROM KENTON CIRCUIT COURT.

1. The law in favor of negotiable paper presumes that the indorsement was made before it became due, and that the *holder* acquired the same in the usual course of business, for value. (8 *Wend.*, 600; 6 *Hill*, 336; *Chitty on Bills*, 69.) These presumptions, which are designed to facilitate the use of negotiable paper, may, however, be repelled by evidence, where an inquiry in relation thereto is admissible between the parties to the action.

2. A creditor who receives negotiable paper from his debtor merely as collateral security for an antecedent debt, and parts with nothing of value, but still holds his debtor bound, and retains all his prior securities, is not regarded by the law merchant as paying for it a valuable consideration, and does not acquire a title to it superior to that of the lawful owner. If, however, he receives it not as collateral security for, but in payment of an antecedent debt, thereby *suspending his right of* action against his debtor upon the original demand, or discharging that cause of action altogether, without any notice of the defect in the title of the person from whom he receives it, he has a right to hold it against the claim of the real owner, though the person by whom the transfer was made had no right or authority to make it.

MENZIES & PRYOR, for appellants, cited 3 *B. Mon.*, 636; 10 *Wendell*, 86; 20 *John.*, 102, 637; 6 *Hill*, 98.

FINNELL & CHAMBERS, for appellee, cited 9 *Barb.*, 158; 4 *Saunders*, 665; 3 *Selden*, 478; 5 *Sandford*, 556; 2 *Duer*, 674; 7 *Barb.*, 85; 1 *Duer*, 265; 14 *Barb.*, 533; 5 *Pr. R.*, 14; 10 *Ib.*, 309; 3 *Code Rep.*, 64; 4 *Pr. R.*, 347; *Story on Agency*, secs. 308, 380; 16 *Peters*, 1; 3 *Kent's Com.*, 81; 5 *John. Ch'y Rep.*, 54; *Story on Prom. Notes*, p. 215, note 1; *Story on Bills*, 183, 192;

*Smith's Mercantile Law*, 321; 3 *Sandford*, 324; 11 *Ohio*, 172; 14 *B. Mon.*, 556; 3 *Cush.*, 162; 11 *New Hamp.*, 661; 8 *Ala.*, 669; *Iredell*, 107; 1 *Zabs. N. J. Rep.*, 665; 1 *Smith Ind. Rep.*, 89; 3 *Mon.*, 72; 1 *Mass.*, 80.

CHIEF JUSTICE SIMPSON DELIVERED THE OPINION OF THE COURT:

The law in favor of negotiable paper presumes that the indorsement was made before it became due, and that the *holder* acquired the same in the usual course of business, for value. (*Pinkerton vs. Bailey*, 8 *Wend.*, 600; *Nelson vs. Cowing*, 6 *Hill's Rep.*, 336; *Chitty on Bills*, 69.) These presumptions, which are designed to facilitate the use of negotiable paper, may, however, be repelled by evidence, where an inquiry in relation thereto is admissible between the parties to the action.

This action was brought by the appellee on a bill of exchange against the acceptor, W.C. Culbertson, which had been indorsed to the bank by the appellants, who were the payees thereof. The appellants having been made parties to the action, claimed the bill sued upon as their own property; and alleged in their answer that they indorsed and delivered it to the house of Olney & Wilcox, of Cincinnati, as collateral security for a debt which they owed them; and that Olney & Wilcox, long after the maturity of the bill, and after their debt had been fully paid, and when they had no right whatever to the bill, sent it to the plaintiff for the fraudulent purpose of having it collected for their own benefit in the plaintiff's name.

Now, this defense was not sustained by any competent testimony whatever. No witness who was introduced by the appellants pretended to know anything concerning the time or the terms of the transfer of the bill to the plaintiff. In the absence of all testimony in relation thereto, the presumptions above mentioned must prevail, and they are sufficient of themselves to sustain the plaintiff's title to the instrument sued upon, and claimed by the appellants.

The plaintiff took the deposition of Olney, a member of the firm of Olney & Wilcox, to prove that the transfer of the bill had been made to the bank before its maturity. The appellants took some depositions to prove statements which Olney had made after the bill matured, tending to show that he then

claimed it as still belonging to his firm. These statements, however, could only be relied upon to impeach the testimony of Olney, and not to invalidate the plaintiff's title. And even if they could be used for the purpose last mentioned, we do not regard them as sufficient, when considered in connection with the other evidence in the cause, to prove that the house of Olney & Wilcox ever had any interest in the bill after they delivered it to the plaintiff, or that it was not delivered to the plaintiff before it became due.

The appellants, however, contend that it appears from the testimony of Olney that the bill was transferred to the plaintiff in payment of a pre-existing debt due by the house of Olney & Wilcox; and that, therefore, it was not acquired in the regular course of business, and cannot be held against the claim of the real owners.

The proof is, that the bill has been the property of the plaintiff ever since the house of Olney & Wilcox delivered it to the bank, which was some months before it became due. Whether, at the time it was delivered, money was advanced upon it by the bank, does not certainly appear. The parties seem to have had mutual accounts, and the house of Olney & Wilcox received a credit for the amount of the bill when it was transferred to the plaintiff. From the facts and circumstances proved, it may, however, be inferred that Olney & Wilcox were the debtors of the plaintiff at the time of the transfer, and that the bill was received in payment of a pre-existing liability.

Conceding, then, that Olney & Wilcox improperly transferred the bill to the plaintiff, and that the appellants, having paid Olney & Wilcox all they owed them, are the real owners thereof, the question is, are they, under the circumstances which have been stated, entitled to the bill in preference to the plaintiff; or can the latter be regarded as a *bona fide* holder for a valuable consideration, and invested with such a title as will prevail against the real owners?

It was decided by this court, in the case of *Lee's administrator vs. Smead, Collard & Hughes*, (1 *Met.*, 628,) that the holder of a commercial instrument, who has received it only as col-

Alexander & Co. vs. Springfield Bank.

lateral security for an antecedent debt, and has given no other consideration for it, cannot be regarded as having received it in the regular course of business, and the title thus acquired is subordinate to that of the true and legal owner.

It is a principle of the commercial law, that the holder of negotiable paper, who has received it in the usual course of business for a valuable consideration, though from a person having no right to make the transfer, acquires a title to it superior to that of the rightful owner, provided he takes it without notice of the infirmity in the title of the person from whom he receives it.

In the case of *Swift vs. Tyson*, (16 *Peters*, 1,) it was decided that where the consideration for the transfer of a negotiable instrument not due is the payment of an antecedent debt, or the suspension of a previous right of action, or the relinquishment of any security, the holder will be regarded as a purchaser for value.

It is in accordance with the usual course of business to receive bills of exchange in payment of an antecedent debt, and by so doing the creditor upon the faith of the bill so received suspends his right of action against the debtor. In this case, however, the creditor's right of action against his debtors was not only suspended, but was actually discharged, they having received credit on their account for its amount, and the creditor agreeing to take the bill without their indorsement.

A creditor who receives negotiable paper from his debtor, merely as collateral security for an antecedent debt, and parts with nothing of value, but still holds his debtor bound, and retains all his prior securities, is not regarded by the law merchant as paying for it a valuable consideration, and does not acquire a title to it superior to that of the lawful owner. If, however, he receives it, not as collateral security for, but in payment of an antecedent debt, thereby suspending his right of action against his debtor upon the original demand, or discharging that cause of action altogether, without any notice of the defect in the title of the person from whom he receives it, he has a right to hold it against the claim of the real owner,

though the person by whom the transfer was made had no right or authority to make it.

If, then, the appellants were in an attitude to assert their claim to the bill on this ground, they could not do so successfully, inasmuch as it was received by the plaintiff in payment of an antecedent debt, without any notice that the house of Olney & Wilcox had no right to transfer it. But the appellants did not allege in their answer that the plaintiff had received it either as collateral security for, or in payment of a pre-existing debt or liability, and it may be therefore doubted whether they could rely upon these matters to sustain their claim to the bill, on the ground assumed in their answer, that it did not belong to the plaintiff, but to the house of Olney & Wilcox. If, however, they had a right to do so, still the plaintiff was entitled to a judgment, inasmuch as their claim to the instrument cannot prevail against a *bona fide* holder for value.

Wherefore, the judgment is affirmed.