JUDGE PRYOR,
delivered the opinion op the court.
Section 3 of chapter 1792, Session Acts of 1869, provides that “all warehouse receipts issued by any warehouseman as provided by this act shall be negotiable and transferable by indorsement in blank, or by special indorsement, and with like liability as bills ’of exchange now are, and with like remedy thereou.” Section 4 provides, in substance, that no warehouseman or other person shall issue any receipt or voucher for goods, wares, merchandise, produce, etc., until such goods, merchandise, produce, etc., shall have been bona fide received into possession and stored by such warehouseman or other person, and shall be in store under his or their control, care, etc. Section 5 provides that no warehouseman or other person shall issue any receipt for such goods, wares, merchandise, produce, etc., unless such goods, merchandise, etc., shall at the time be the property without encumbrance of said warehouseman; and if encumbered by prior lien, the *421 same shall be set forth and explained in the receipt. Section 9 of the same act provides, in substance, that when any such receipt or voucher has been issued as provided in the act, and used or pledged as collateral security or otherwise for the loan of money, the bank or person to whom the same is pledged, etc., shall have power and authority to sell the same, and transfer title thereto in such manner as may be agreed to in writing by the parties at the time of making the pledge. It is further provided that neither the warehouseman nor other person shall sell, encumber, or remove the goods, merchandise, produce, etc., for which the receipt was given without the consent of the person holding such receipt and the production of the receipt.
The legislature in making such paper negotiable evidently intended to guard the rights of the innocent holder, in requiring that such paper when placed on the market or disposed of in the usual course of trade should carry on its face all the evidences of' any lien or encumbrance that might exist upon the property it is intended to represent. That the appellee was a warehouseman when the receipt was issued is undenied, and that it contains no recital by indorsement or otherwise of any lien upon the whisky for the purchase-money is equally certain. The receipt reads as follows:
“Distillery Free Warehouse No. 1, Cynthiana, Ky., ] September 27, 3870. J
Received of Messrs. H. Wolf & Co., in Distillery Free Warehouse No. 1, Cynthiana, fifty barrels of whisky, marked T. J. Megibben, serial numbers subject to regulations Revenue Department, deliverable on return of this receipt and payment of storage and charges.
“T. J. Megibben, Proprietor.”
The numbers are also annexed to the receipt. H. Wolf & Co. purchased the whisky on four months’ time, and failed to meet their note at maturity, and have never, so far as *422 appears from the record, paid any part of the purchase price. Some time in October of the same year H. Wolf & Co. borrowed of the appellants, Greenbaum Bros. & Co., bankers in the city of New York, four thousand dollars, and at the time of the loan deposited with them the receipt of Megibben, the appellee, as collateral security for its payment. In a few days after this transaction Wolf & Co. failed, and upon the production of the receipt by the appellants to the appellee Megibben the latter refused to deliver the whisky or account for its value without first deducting the amount due him by Wolf & Co. on their purchase. The evidence shows that the money was loaned, the receipt delivered over, indorsed in blank as collateral security, and that Wolf & Co. at the time of the loan were regarded as solvent; The signature of Megibben to the receipt had been affixed by his clerk, as had been his habit, and his impression is that he informed his principal of his action in the premises. It thus clearly appears that the receipt was issued and pledged by Wolf & Co. to innocent parties for the loan of money without any evidence whatever of the non-payment of the purchase-money due the appellee.
The latter as warehouseman could have easily protected his rights, and at the same time prevented any loss to innocent parties by complying with the plain letter of the statute in indorsing the nature and extent of his lien on the receipt; but, on the contrary, he certifies that Wolf & Co. at the date of the receipt had fifty barrels of whisky in his warehouse subject to storage and charges, and upon the payment of these charges, which would not then have exceeded fifteen dollars, as the proof shows, he obligated himself to deliver the whisky to the party producing the receipt.
The evidence conduces to show that Wolf & Co. practiced a fraud on the appellee; and while this may be so, the delivery of the receipt to Wolf & Co., and the indorsement to appel *423 lants for value without any knowledge on their part of Wolf’s misconduct, vested them by reason of the act in question with the right to the whisky or its proceeds to satisfy their debt. The appellee, having trusted-Wolf & Co., must bear the loss. We can not perceive any reason for requiring a demand of the whisky by appellants of the appellee and then notice to Wolf & Co. of appellee’s refusal to deliver it. This might have been necessary to hold Wolf & Co. liable to appellants; but; by the express language of the statute Greenbaum Bros. & Co. (appellants) were invested with the right to the whisky, and appellee could have made no disposition of it without their consent. They were the bona fide holders of the paper, and were fully protected as indorsees by the various sections of the act referred to.
That appellants were holders for value is evidenced by the undisputed fact that they loaned Wolf & Co. four thousand dollars upon the pledge of the whisky or the receipt as a collateral, and when appellee refused to deliver it on demand, accompanied by a tender of the receipt, their cause of action was complete. When this receipt was delivered to Wolf & Co. the appellee in effect said to all innocent parties who might come into possession of it, in the usual and legitimate course of business, that Wolf & Co. were the owners of fifty barrels of whisky, that it was in his warehouse and under his control, and that no lien existed upon it except for storage and charges.
The distinction between this case and that of Alexander & Co. v. Springfield Bank (2 Met. 534) is that in the last-named case the holder parted with nothing of value when he received the paper. It was not in discharge of a pre-existing debt or for an additional loan of money, but merely to secure a debt that was in no manner released; while in this case the appéllants actually loaned four thousand dollars on the faith of the receipt. It was not pledged to secure an antecedent debt, *424 but transferred in order to create a debt, as when the indorsement was made and the receipt delivered the money was loaned. Whether or not Wolf & Co. complied with their contract is immaterial in determining the rights of the parties to this controversy; nor is it material that appellants made other loans to Wolf & Co. at or prior to the time at which this transaction took place.
The plea of non est factum was properly refused, as it was offered when the case was ready for submission, and besides there was no proof in the record to support it. As this case was transferred to equity, and the appellants hold the receipt as collateral security only for the payment of the four thousand dollars, the whisky should be sold, first applying the proceeds to appellants’ debt, and the balance if any to appellee on the debt due by Wolf & Co.
The judgment is reversed, and cause remanded for further proceedings consistent with this opinion.