CASE 8—ORDINARY—SEPTEMBER 9.

# First National Bank of Louisville v. Boyce..

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1. There is no substantial difference between the effect of a pledge made - by a factor and one made by a pledgee.

2. Although a factor has no right to pledge the goods of his principal, yet the amount sought to be recovered of an innocent pledgee of the factor by the consignor must be reduced by the sum due from him to the factor.

3. If the pledgee has acted in good faith, the measure of damages is the - actual loss sustained by the consignor, and, therefore, the amount due to the factor by the consignor must be deducted from his demand. against the pledgee.

4. Although warehouse receipts are negotiable, the holder of them takes no better title than if the goods were held by him. Such receipts represent the property to which they refer, and their negotiability serves only to cut off any defense the warehouseman may have.

MESSRS. BARR, GOODLOE & HUMPHREY AND LOUIS N. DEMBITZ. FOR APPELLANTS.

1. The judgment is erroneous, because of the provisions of the warehouse act.

2. Independent of that act, upon the principles of common law the appellant is entitled to a reversal.

3. Before the appellee can recover, he must tender to appellant, as pledgee,. the $2,994 due by him to Smyser, Milton & Co., for advances upon the goods consigned to him. (Ray v. Sweeney, 14 Bush, 10; 2 Strange, 1178; 4 Burrows, 2046; 5 D. & E., 604; 3 Esp., 182; 6 East, 538; 4 Rawle, 195; 3 Bing., 139; 7 East, 5; 15 Ibid, 38;. 2 Kent, 628; 6 East, 17; 1 M. & S., 140, 484; 15 East, 44; Queiroz, v. Trueman, 3 Barn. & Cress., 342; Story on Bail., 326; Story on. Agency, 113; 6 Met., 741; 11 Howard, 209; 7 N. H., 446; 4 John., 115; Donald v. Suckling, L. R., 1; Q. B., 585; L. R., 3 Ex., 299;. 3 M. G. & S., 54; E. C. L., 399; 5 Ibid, 914; 22 Pick., 40; 12 N.. H., 239; English Factors' Act of 1825; 96 U. S., 321; 36 N. Y., 365; 2 M. & Selw., 398; 2 Met., 531; 7 Mon , 455; 1 Met., 115; 2 Met., 433; Starkie's Ev., 1492.

MESSRS. BARRETT & BROWN FOR APPELLEE.

1. A factor receiving goods for sale cannot pledge them for his own debt. (2 Strange, 1178; 6 East, 17; Ibid, 538; 7 Ibid, 5; 5 D. & East,. 604; 1 Maule & Selw., 140; 6 Ibid, 1; 2 Brod. & Bing., 639; 5.

Vesey, 211; 2 Maule & Selw., 298; 3 Barn. & Cress., 342; 2 Mass., 379; 1 Mason, 446; 1 McCord, 1; 11 Howard, 209; 2 Kent's Com., 625; Story on Agency, sec. 113; Ibid on Bailments, sec. 326; Newcomb v. Basket, 14 Bush 658; Ferguson v. Northern Bank Ky.. 14 Bush, 555; 7 Mon, 213; 1 J. J. Mar., 393; 4 Ibid, 26; 7 East, 5; 1 Dana, 110.

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

Appellee, a manufacturer of flax bagging in Munice, Indiana, shipped bagging at various times to Smyser, Milton & Co., commission merchants in the city of Louisville, to be sold on his account and proceeds remitted as required. Smyser, Milton & Co. having advanced to appellee, on current account, $2,994, and having 840 rolls of the bagging unsold, placed it in the warehouse of J. W. Stine & Co., and took receipts therefor in their own name. These receipts they indorsed to appellant to secure a present loan of $3,360. Subsequent to the negotiation of this loan, Smyser, Milton & Co. became insolvent, and executed a deed of assignment, for the benefit of all their creditors, to Jacob L. Smyser, to whom appellee tendered the amount of $2,994, due from him to Smyser, Milton & Co., and demanded his bagging. The assignee failing to deliver the bagging, appellee made demand of appellant, accompanied by a notification that the assignee acknowledged the correctness of the amount tendered to him, and requested appellant to deliver the bagging to appellee. Appellee made no tender to appellant of the amount due Smyser, Milton &. Co., nor of the amount advanced by appellant to Smyser, Milton & Co. on the warehouse receipts, and on the refusal of appellant to deliver the bagging, this action was instituted by appellee against appellant for the full value of the bagging.

The answer claims, first, that appellant received the warehouse receipts in good faith, and without knowledge that any other than Smyser, Milton & Co. had any interest in the bagging, and it was therefore entitled to hold the property for the loan; and, second, that appellee is a non-resident of Kentucky, having no property in this State except the interest in the bagging, and asking to have the $2,994, due by appellee to Smyser, Milton & Co., set off against any recovery that appellee might have in the action. A demurrer was sustained to this answer, a judgment rendered against appellant for the full value of the bagging, that was fixed by the court at $4,200.

Two questions will be considered: First, whether a factor, independent of the warehouse act of this State, has power to make valid pledges; second, whether that act enlarges the power of the factor under such circumstances as here shown.

It may be conceded that in England, prior to the passage of the Factors' act, in 1825, it was generally held that a factor could not pledge, for his own debt, goods consigned to him for sale. This rule in America has not, in its fullest sense, been followed; nor has it been uniformly adhered to in England.

The case of Queiroz v. Trueman (1824), 3 Barnwall & Cresswell, appears to confine the consignor's right of recovery, against the pledgee of the factor, to the value of the goods, less the amount paid by the factor to the consignor. In that case, plaintiffs shipped to Caumont, a commission merchant, certain cottons to be sold on their account. Caumont delivered the cotton for sale to the defendants, who made large advances on the cotton to Caumont; and defendants having sold it, settled with Caumont's assignee in bank-

ruptcy, deducting the amount of advances. Plaintiffs brought an action in assumpsit to recover the value of the cotton. Abbott, C. J., in delivering his judgment, says:

"The money advanced in this case was for Caumont's use, and not for the plaintiff's; the defendants then have received the proceeds of the goods and have not paid them over to the principals. Caumont, in the first instance, had no authority to pledge, nor did he derive any from the correspondence. The plaintiffs are therefore entitled to a verdict for the net proceeds of the goods, deducting such charges as Caumont was entitled to make, and also the sum which he remitted on account of these goods; that leaves a balance of £2,611 15s. 5d. due the plaintiffs."

It will be observed, that although it is said that Caumont had no authority to pledge for the advances made by defendants, they were permitted to reduce plaintiffs' recovery by the amount paid to them by Caumont on account of these shipments.

In the application of the principle established in that case it can make no difference that the action was in assumpsit. All forms of action have been assimilated by the Code. It is only required that the petition state facts sufficient to constitute a cause of action under any form of proceeding at common law, and whether it be in assumpsit or in trover, any defense, whether at law or in equity, may be pleaded and relied upon.

It does not appear that the pledge of a factor is tortious. to such an extent as to render it void *ab initio*, at least to the extent of his lien.

In Story on Agency, section 113, it is said:

"Factors have no incidental authority to barter the goods. of their principal, or to pledge such goods for advances made

to them on their own account, or for debts due by themselves; although they may certainly pledge them for advances lawfully made on account of their principal, or for advances made to themselves, to the extent of their own lien on the goods.''

Section 326, Story on Bailments, reads:

''In America the general doctrine that a factor cannot pledge the goods of his principal has been frequently recognized. But it does not appear as yet to have been carried to the extent of deeming the pledge altogether a tortious proceeding, so that the title is not good in the pledgee, even to the extent of the lien of the factor; or, so that the principal may maintain an action against the pledgee without discharging the lien, or at least without giving the pledgee a right to recoup the amount of the lien in the damages.''

At the close of that section, in brackets (eighth edition), is the following:

''Later decisions have, however, fully settled the law that a pledge by a factor of his principal's goods is wholly tortious, and the owner may recover their whole value of the pledgee without any reduction or recoupment for his claim against the factor.''

In support of this statement, the editor cites four cases, three of which, we think, have no bearing on the question. The first is that of Hoffman v. Noble, 6 Met., 74. That was not the case of a factor. There a purchaser of certain wines at auction obtained possession of them by fraudulent representations, and transferred them to an innocent purchaser for value, and it was held that the purchaser took a title that was not defeasible. The second, Warner v. Martin, 11 Howard (U. S. C.), is where the clerk of the factor delivered to the defendant the goods of the plaintiff

First National Bank of Louisville v. Boyce.

in satisfaction of a debt owing by the factor to the defend-
ant, he at the time knowing that the factor was insolvent.
Stress is placed by the Court upon the proposition that the
factor cannot delegate to his clerk authority to sell, and
upon the fact that the defendant knew of the factor's in-
solvency; that no money passed; that the purchase was
not made in the due course of business, and that the re-
covery by plaintiff would leave the defendant in as good
an attitude as he was prior to the transfer of the property
to him. The third case cited, Holton v. Smith, 7 N. H.,
is not in point. There the factor sold the goods in payment
of his own debt, the purchaser knowing that the factor held
the goods for the consignor, and, besides, there was nothing
due from the principal to the factor. The fourth case cited,
Newbold v. Wright, 4 Rawle (1833), is the only one that
tends to sustain the position stated in the note of the editor.
In that case we are of the opinion that the question of the
right of recoupment did not necessarily arise, because it did
not appear that there was any debt due by the consignor to
the factor. The conclusion of the Court upon this point
was merely incidental to the discussion of the principal
questions in the case.

As said by Judge Story, it is difficult to point out any
substantial difference between the case of a pledgee and the
case of a factor. The factor holds the goods of his principal
as a security and a pledge for his advances and other dues,
with the right to sell, as the pledgee has the right on the
pledgor making default. In either case, it is much more
than a mere lien; there is a right of dominion over the
property to the extent of divestiture of title by sale; there
is a right in the thing—a special property—that makes the
rights of the pledgee and of the factor analogous.

In Donald v. Suckling, 1 Q. B., 597 (1866), Shee, J., says: "In all the decisions on pledges by factors the relation between a factor who has made advances on the goods intrusted to him and his principal has been held not distinguishable, or barely distinguishable, in its legal incidents, from the relation between pawnee and pawnor."

If, then, the pledgee may transfer the pledge so as to give the transferee the same right as against the pledgor that the pledgee had, why may not the factor do likewise? Generally, when the English authorities undertake to distinguish between the rights of a pledgee and of a mere lien-holder, reference is had to a naked lien, where there is only the right of possession, unaccompanied by the right to exercise acts of ownership in the disposition of the property; such an one, for instance, as requires the intervention of a court of equity to divest the title in satisfaction of the lien. We are not to be understood as saying that the transfer of the pledge or of the goods by the factor leaves the contract between the pledgor and pledgee, and between the principal and factor, intact; it is to be considered to subsist for the purpose of being referred to for the measure of damages sustained by the pawnor or principal, and to determine the damages to be recovered by them. (Shee, J., in Donald v. Suckling, Queen's Bench, vol. 1, British Law Reports.)

Strictly speaking, it is not a *right* in the bailee to pledge or dispose of the property, for ordinarily the bailor may consider the contract of bailment at an end, and may have an action against the transferee for damages, the measure of which may be determined by the original contract between the bailor and bailee. It is said by Mellor, J., in Donald v. Suckling: "I think that when the true distinction between the case of a deposit by way of pledge.

of goods for securing the payment of money, and all cases of *lien*, correctly so described, is considered, it will be seen that in the former there is no implication, in general, of a contract by the pledgee to retain the personal possession of the goods deposited, and I think that, although he cannot confer upon any third person a better title or a greater interest than he possesses, yet, if nevertheless he does pledge the goods to a third person for a greater interest than he possesses, such an act does not *annihilate the contract of pledge* between himself and the pawnor, but that the transaction is simply inoperative as against the original pawnor, *who, upon tender of the sum secured, immediately becomes entitled to the possession of the goods,* and can recover in an action for any especial damages which he may have sustained by reason of the act of the pawnee in repledging the goods."

The facts in that case were, that the plaintiff had pledged certain debentures with one Simpson, as security for the payment of a bill of exchange drawn by plaintiff under an agreement that Simpson might sell or otherwise dispose of the debentures, in case the bill was not paid by the plaintiff. Simpson pledged the debentures with the defendant for the loan of money, which remaining unpaid, and the bill not having been met, plaintiff instituted a suit to recover the debentures, without tendering the amount of the bill for which they had been deposited as security. The judgment, on a demurrer to the plea setting up these facts, was for the defendant. Cockburn, C. J., says: "The question here is, whether the transfer of the pledge is not only a breach of the contract on the part of the pawnee, but operates to put an end to the contract altogether, so as to entitle the pawnor

to have back the thing pledged without payment of the debt.  I am of the opinion that the transfer of the pledge does not put an end to the contract, upon which the owner may bring an action for nominal damages if he has sustained no substantial damages, for substantial damages if the thing pledged is damaged in the hands of the third party, or the owner is prejudiced by delay in not having the thing delivered to him on tendering the amount for which it was pledged." In support of the conclusion reached, the case of Johnson v. Stear, 15 C. B. (N. S.), is cited. The case of Halliday v. Holgate L. R., 3 Ex. (1868), is decided on the authority of Donald v. Suckling and of Johnson v. Stear. (Evans v. Porter, 2 Gallison, opinion by Judge Story.)

In the case of Lewis v. Mott, 36 N. Y., 400 (1867), it was held that the pawnor could not recover of the transferee of the pledgee without discharging the obligation of the pawnor to the pledgee.

Talty v. Freedman's Savings and Trust Co., 3 Otto (321, U. S. C.), cites and approves the above mentioned cases.

In Belden v. Perkins, 78 Ill. (1875), in assumpsit, it was held that the pawnor could only recover of the vendee of the pledgee the value of the property, less the amount due from the pawnor to the pledgee.

Doesserman Man. Co. v. Walerston, 3 Metcalf (Mass.), 16 (1841), was trover for unbleached cotton cloths, which plaintiff had sold to A upon agreement to print and ship to B, and on receiving his acceptance turn them over to plaintiff, when title would pass. A procured the cloths to be printed, and shipped them to defendant, who advanced on them. Held, plaintiff could recover, but measure of damages must be value of cloths as unbleached.

In Clark v. Dearbon, 103. Mass., 335 (1869), lumber was shipped by F to A, who had advanced on it. He shipped it to plaintiffs for sale, who demanded it of the master of the vessel in which it had been shipped, and tendered freight. The defendant, who had attached it, as sheriff, on debt of F, paid the freight and took it away from the vessel. In trover by the plaintiffs it was held that they could recover, but damages must be reduced by freight.

Whitney v. Beckford, 105 Mass. (1870): "A, factor, who had bought goods for his principal residing at W, sent them, by mistake, to a person residing at S, who received them in good faith and paid freight. Held, that in estimating damages in an action by the principal against this person for the conversion of the goods, the defendant was entitled to a deduction of the amount paid by him for freight.

This equitable doctrine in an action of trover was recognized in this State as early as 1837, in the case of Linville v. Black (5 Dana, 177), opinion by Chief Justice Robertson. It is there said:

"Black having, as constable, several executions of *fieri facias* against one Rudd, levied them on a slave (Joe) in his possession, mortgaged by him more than two months before to Haley & Linville, by a deed which had not been recorded; and the mortgagees having, on the next day, taken the slave from the possession of Black, without his consent, and sold or otherwise converted him to their own use, he sued them in an action of *trover* and conversion, and recovered a judgment for damages equal to his estimated value. Against that judgment they now urge . . . . that the assessment of damages was exorbitant.

"The mortgage, for want of registration within the time prescribed by law, being void so far as the execution cred-

itors were concerned, the constable had a right to levy those executions on Joe, and to sell him for the purpose of making the amount of them; and so far he could maintain this suit, even against the mortgagees. . . . . So far as this suit is concerned, the mortgagees occupy the place of the mortgagor, and the judgment should be just what it should have been had there been no mortgage, and had Rudd himself, as owner of the slave, done what the plaintiff in error did with him. And if the owner of a slave levied on by an officer tortiously ·convert him to his own use, the officer thus wronged could surely not justly claim, in an action of *trover*, more than the amount which he had a right to make by a sale of the slave under execution.

"If this judgment stand, there must be restitution of a part of it, either to mortgagor or mortgagees. If it should be made to the former, the rights of the latter might be frustrated."

Swigert v. Thomas, 7 Dana, 223 (1838): "The mortgagees of a slave forcibly took it from a purchaser of the equity of redemption, and the slave was afterwards sold and the proceeds applied to the mortgage debt. It was held that the damages that the first purchaser could recover could not exceed the value of the equity of redemption, which was all that he acquired by his purchase." See also Geoghegan v. Ditto, 3 Met., 233.

In the cases of Neder v. Keller, 69 Pa. St., Work v. Bennett, 70 Pa. St., and Baltimore Mar. Ins. Co., 25 Md., which were actions of trover by pledgors against pledgees for illegal sale of pledges, it was held that the amount of the pledgor's debt should be deducted from the damages.

The case of Pool v. Adkinson, 1 Dana, 110, has no application. That was the case of the wrongful sale of prop-

erty by an agent who had received and not paid over the proceeds of the sale to his principal; and the Court say that trespass, trover, or detinue will lie.   Citing this case, counsel for appellee insists that the illustrations given in the opinion and the authorities there cited sustain the view taken by him.   It will be observed that a majority of the Court, in that case, attempted to restrict these illustrations and citations to the question under consideration.   On page 118; Chief Justice Robertson, delivering the opinion of the majority of the Court, says: "In deciding the question of liability in this case, we have referred to other cases and authorities for the purpose of establishing the legal doctrine which apply to the facts as stated in the instruction, and should determine their legal effect. . . . . Nor shall we feel responsible for any misconception or misapplication of any authority or *dictum* which we have quoted or cited." The questions arising in Linville v. Black, 5 Dana, and in Swigert v. Thomas, 7 Dana, which are pertinent to the discussion here, did not arise in the case of Pool v. Adkinson.

The case of Newcomb-Buchanan & Co. v. Baskett, 14 Bush, 658, does not authorize the deduction drawn from it by counsel for appellee.   In that case, Taylor had no right to sell or in any way encumber the title to the whisky, which was in Baskett, and, therefore, an unauthorized payment to Taylor by Newcomb-Buchanan & Co. was not payment to Baskett, nor was it for his benefit, nor did he derive, either directly or indirectly, any benefit from the transactions between Taylor and Newcomb-Buchanan & Co., nor was Baskett indebted to Taylor.   Under such a state of fact, the question of recoupment or equitable set-off could not arise.

We think it clear, upon principle and authority, that ordinarily there is no substantial difference between the

effect of a pledge made by a factor and a pledge made by
a pledgee.   The confusion that appears to have arisen in the
application of the law to particular cases, as they arise,
seems to have resulted from a conflict between the techni-
cal forms of action and the rules of procedure at common
law, and the manifest justice and equity of the cases.   So
far has this gone, that equitable defense, by way of recoup-
ment or equitable set-off, has been entertained and made
effectual in actions of trover.   While saying that the factor
had no right to pledge the goods of his principal, the Courts
have, with great unanimity, allowed the amount sought to
be recovered of the innocent pledgee of the factor to be
reduced by the sums justly due from the principal to his
factor.   Wherever the action sounds in damages, the plaint-
iff has been restricted in his recovery to the damages
actually sustained; that is, in all cases where the factor or
pledgee had all the *indicia* of the rights of property in the
thing pledged, and the defendant was without knowledge to
the contrary, and gave for the property, or on the faith of
it, a valuable and present consideration.   It seems, there-
fore, needless to inquire whether, strictly speaking, the
factor or pledgee has "*a right to pledge*" the property in-
trusted to him, as the measure of damages, if the defend-
ant be innocent, is always the actual loss sustained by the
plaintiff.   With this qualification as to the plaintiff's right
of recovery, it may be conceded that the factor or pledgee
has no right to repledge the thing intrusted to him for ad-
vances made to himself; and even that such a pledge is
wholly tortious, giving the holder no property in or to the
thing, and that the contract between the principal and his
agent, who thus acts without authority, is annulled.

From this stand-point, what is the situation of the parties and what are their rights? Appellee is a non-resident, and without property in this State. Smyser, Milton & Co., who are insolvent, and before the Court by their assignee, are creditors of appellee in the sum of $2,994, for which they held a lien on the bagging intrusted to them by appellee. While that lien was in force, and while they had all the *indicia* of property in the goods, they pledged them to appellant, without notification of their relation to the property, for the sum of $3,360, advanced on the faith of their ownership. If appellee is permitted to recover of appellant the full value of the goods, he will have received $2,994 in excess of the damage he has actually sustained, while appellant, an innocent purchaser for value, will be loser to the extent of $3,360. It is true appellant may have its judgment against Smyser, Milton & Co., but their insolvency renders it of no avail. There is no question as to the amount due by appellee which he must pay to Smyser, Milton & Co., or to appellant. He can have no ground for complaint if he pays it, under the direction of the Court, to appellant, for he will be discharged from liability to Smyser, Milton & Co. by paying this debt, to that extent, to appellant. This is manifestly equitable and just to all parties, and will fully protect the rights of all.

Although warehouse receipts are made negotiable by the law of this State, the holder of a receipt takes no better title and stands in no better attitude than if the goods themselves were held by him. Such receipts, no matter under what section of the act of 1869 they are issued, are in lieu of, and represent the property to which they refer, and their negotiability serves only to cut off any defense the warehouse keeper may have. (Greenbaum Bros. & Co. v. Megibben,

10 Bush, 419.)   Any other construction would enable any one, fraudulently depositing the goods of another, to pass title, as against the true owner, by obtaining a warehouse receipt in his own name.

As said in Newcomb-Buchanan & Co. v. Baskett, 14 Bush, 667, the value of the property at the date of the conversion is the true criterion of damages.   This has long been the settled doctrine in this State.

In this case, the conversion occurred at the date of the transfer of the warehouse receipts to appellant, and not at the date of the demand by plaintiff of defendant, appellant here.   The acceptance of the warehouse receipts as collateral for the advances made to Smyser, Milton & Company, was an unauthorized exercise of dominion over the property that amounted to a conversion, although it was done without knowledge of appellee's claim to the property.

Judgment reversed, and cause remanded, with directions for further proceedings consistent with this opinion.