## Citizens' National Bank v. W. H. Simmons & Company.

(Decided October 20, 1925.)

### Appeal from Warren Circuit Court.

1. Warehousemen—Purchase of Warehouse Receipts from Broker Held Not to Deprive True Owner of Rights.—Where broker purchased tobacco for plaintiff, received payment therefor, stored same in his warehouse or storage house, and delivered warehouse receipts to plaintiff, and later broker removed tobacco to another warehouse and pledged warehouse receipts to bank for advances, held purchase by bank of warehouse receipts gave it no better title than its vendor had, and did not deprive plaintiff of his right to the property.

2. Warehousemen—Property Owner Not Divested of Rights by Agent's Wrongful Transfer of Warehouse Receipts.—An owner, by leaving property in hands of agent, is not divested of his rights by agent's wrongful transfer of warehouse receipts to third person for value.

THOMAS, THOMAS & LOGAN for appellant.

SIMS & SIMS for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

W. H. Simmons & Company, doing business at Springfield, Tennessee, were dealers in tobacco. B. O. Burr was a tobacco broker at Bowling Green, Kentucky, doing business in the name of B. O. Burr & Company. In the tobacco season of 1919-20, Simmons & Company made an arrangement with Burr, by which he was to buy tobacco for them on the loose leaf market in Bowling Green, and dry the tobacco and prize it and ship it as they might direct. As Burr bought tobacco the invoices from the warehouse company were made out to B. O. Burr & Company and these invoices were sent to Simmons & Company, who sent checks to pay for the tobacco. Burr bought in this way 275,000 pounds of tobacco, which

he dried and prized in hogsheads. By direction of Simmons & Company he shipped to purchasers in Canada 225,000 pounds of the tobacco. In August, 1920, Burr went to Springfield, Tennessee, for the purpose of having a settlement with Simmons & Company. He then had twenty-nine hogsheads of this tobacco in his warehouse or storage house, and he there delivered to Simmons & Company the warehouse receipts of Burr & Company for the twenty-nine hogsheads of tobacco on a settlement of their accounts. On that settlement he fell in debt to Simmons & Company, over and above his commissions, something over $200.00. Simmons & Company then procured insurance in their own names on the tobacco. Later in the fall Burr moved the tobacco from his house to the warehouse of the Warren County Loose Leaf Tobacco Warehouse Company and took from that company warehouse receipts therefor in the name of B. O. Burr & Company. These warehouse receipts he pledged to the Citizens' National Bank of Bowling Green to secure loans made him by the bank. The first notice that Simmons & Company had of all of this was a notice from the insurance company telling them that it had agreed to the removal of the tobacco to the other warehouse. They then went to Bowling Green and asserted claim to the tobacco. This litigation followed. On the trial of the case the circuit court entered judgment in favor of Simmons & Company. The bank appeals.

It is earnestly insisted for the bank that B. O. Burr & Company was simply B. O. Burr, that B. O. Burr was not a warehouseman within the meaning of the statute; that his warehouse receipts given to Simmons & Company passed no title and that the bank has a valid lien on the tobacco by reason of the pledge to it of the warehouse receipts delivered to it. There is no doubt that the bank acted in good faith and without notice of any defect in the title. It is equally clear that Simmons & Company acted in good faith and that nothing they did caused the bank to make the loan. They simply left their property in the hands of their broker until they got ready to sell it, and before they sold it he moved the property and made the pledge to the bank. But the fact is it was always their property. They paid for it. Although the broker bought the tobacco for them in his own name, he only held possession of it for them. He then turned over the invoices to them and they paid for the tobacco. The case therefore falls literally within the rule laid down by this

court in First National Bank v. Boyce, 78 Ky. 42, where upon similar facts this court said:

"Although warehouse receipts are made negotiable by the law of this state, the holder of a receipt takes no better title and stands in no better attitude than if the goods themselves were held by him. Such receipts, no matter under what section of the act of 1869 they are issued, are in lieu of, and represent the property to which they refer, and their negotiability serves only to cut off any defense the warehouse keeper may have. (Greenbaum Bros. & Co. v. Megibben, 10 Bush 419.) Any other construction would enable any one, fraudulently depositing the goods of another, to pass title, as against the true owner, by obtaining a warehouse receipt in his own name."

This opinion is in accord with the common law to the effect that the rule of *caveat emptor* applies in the sale of personal property and that the purchaser only acquires such title as his vendor has. The purchaser of a warehouse receipt acquires the title of his vendor to the property, but he acquires nothing more. The owner loses no right by leaving his property in the hands of his agent.

"The rights of the owner of personal property are not necessarily divested because another having the possession thereof wrongfully deposits it in a warehouse and then transfers the receipt to a third person for value." 27 R. C. L. 974.

Judgment affirmed.