NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY *v.* FLOURNOY.

ATKINSON, J.  1. When a carrier issues a bill of lading containing a statement as to the quantity of goods received, with the understanding that the goods may be transferred by means of a transfer of the bill of lading, the transferee is justified in relying upon the representation of the carrier, made in the bill, with reference to the quantity of goods received under it; and as to one who receives the bill in good faith, relying upon the statement of quantity, and pays a consideration, the carrier will be estopped from showing that, though he received some of the goods, he has not received the quantity recited in the bill.  6 Cyc. 418, and cases cited under note 90; Civil Code, §§ 4133, 4134; Smith *v.* Southern Ry. Co., 89 S. C. 415 (71 S. E. 989).

2. To guard against such estoppel the carrier may insert in the bill of lading, "shippers load and count," or some like clause qualifying his representation; and in that event he will not be liable to an assignee for value if he delivers all the goods received.  6 Cyc. 418, and cases cited under note 94; see also Judge Freeman's note to National Bank *v.* Baltimore R. Co., 105 Am. St. R. 321, at pages 353-354 (99 Md. 661, 59 Atl. 134); Alabama Great Southern R. Co. *v.* Commonwealth Mfg. Co., 146 Ala. 388 (42 So. 406).

3. The effect of the agreement contained in the bill of lading, as disclosed by the statements contained in the agreed statement of facts, was that the plaintiff should not be afforded such opportunity for inspection as would enable him to discover any shortage in the quantity of goods specified until after payment of the draft; but the fact that the bill of lading contained the recital "allow inspection" will not affect the case.

4. Under the agreed statement of facts, it appearing that the carrier received a certain part of the goods specified in the bill of lading, but did not receive the goods the value of which was the basis of the action, and that the bill of lading bore on its face qualifying words sufficient to convey notice to the purchaser that the carrier did not intend to vouch for the quantity of goods placed in the car by the shipper, the carrier was not liable to the plaintiff for the deficiency, and is not estopped from setting up in the action the fact that the missing goods were never received for transportation.

5. The judge, to whom the case was submitted for decision without the intervention of a jury, committed error in finding for the plaintiff.

*Judgment reversed.  All the Justices concur.*

MARCH 1, 1913.

Complaint. Before Judge Felton. Bibb superior court. November 16, 1911.

J. A. Flournoy, as transferee of a bill of lading, instituted an action by attachment against the Nashville, Chattanooga & St. Louis Railway, for the recovery of the value of certain oats for which the defendant had issued its bill of lading at Nashville, Tennessee, consigned to the order of the consignor at Macon, Georgia. The case was tried upon an agreed statement of facts, on consent of the parties, by the judge without the intervention of a jury; and a judgment was rendered in favor of the plaintiff for the value of the oats. The defendant excepted on the ground that the judgment was contrary to the law and the evidence. The statement of facts was as follows:

"1. On July 29, 1909, J. A. Flournoy bought from the Old Hickory Grain Company at Nashville, Tenn., 280 sacks of corn weighing 39,200 pounds, and 60 sacks of oats weighing 9,600 pounds, to be shipped from Nashville, Tenn., in the same car as one car-load shipment to Macon, Georgia. On the date stated, the N., C. & St. L. Ry. Company issued to the Old Hickory Company its bill of lading reciting the receipt of said corn and oats for transportation to Macon, Georgia, consigned to the order of Old Hickory Grain Company, notify J. A. Flournoy; a true copy of which bill of lading is attached to defendant's answer filed in the above case. At the time said bill of lading was issued the words 'shippers load and count,' and the words 'allow inspection,' were stamped or written on said bill of lading.

"2. Said Old Hickory Grain Company transferred and assigned said bill of lading by endorsement thereon in blank. Thereupon said Old Hickory Grain Company drew its sight draft on J. A. Flournoy, Macon, Ga., payable to the order of the Fourth National Bank of Nashville, Tenn., for $681.87, the same being the contract price and market value of said corn and oats, on account of N. & C. 5755, the same being the initial and car number recited in said bill of lading, and attached said sight draft to said bill of lading, and delivered the draft and bill of lading attached to said bank. The payee in said draft endorsed on said bill of lading the following: 'The Fourth National Bank of Nashville, Tennessee, herein gives notice to all parties acquiring this draft, bill of lading, or any interest therein, or in the goods they call for, that it as-

sumes no responsibility whatever for the quality, quantity, or delivery of the goods covered by said draft or bill of lading,' and forwarded said draft and bill of lading attached to the Fourth National Bank of Macon, Georgia, for collection.

"3. On August 4, 1909, the Fourth National Bank, of Macon, Georgia, presented said draft and bill of lading attached to said J. A. Flournoy for payment, and said draft was by him paid on presentation, and said draft and bill of lading were each stamped paid, and delivered to him, by the Fourth National Bank of Macon, Georgia. The contract price and market value of the 60 sacks of oats on the day said draft was paid was $182.25, and said amount was included in said draft, making with the value of the corn the amount stated in said draft.

"4. J. A. Flournoy paid said draft on the faith of said bill of lading, and relying upon the recital therein that said railway company had received 280 sacks of corn and 60 sacks of oats for shipment, and that the same were shipped in said car N. & C. 5755, believing in good faith that said bill of lading was a valid instrument for goods received for shipment as recited in said bill of lading, and not relying at all on the general credit or solvency of said Old Hickory Grain Company. He did not inspect or seek to inspect the contents of said car, as allowed under the bill of lading. He had no right to remove and was not allowed to remove any of the contents of said car until after he had paid said draft and acquired the possession and title to said bill of lading, and surrendered said bill of lading to the connecting carrier of the N., C. & St. L. Rwy. Company, which had possession of said car, and he could not ascertain that there were no oats in said car without removing some of its contents, and he had no reason to suspect that the oats were not in said car. When said car was unloaded it was found to contain 280 sacks of corn only. The car was loaded by Old Hickory Grain Company at its elevator, and said bill of lading was issued upon data furnished said railway company by said Old Hickory Grain Company as to the contents of the car. 280 sacks of corn were put in the car and delivered to said J. A. Flournoy under said bill of lading. No oats were put in the car, which fact was not known to the railway company at the time said bill of lading was issued, or at the time Flournoy paid the draft, nor until about thirty days after the payment of the draft. In

point of fact, no oats were ever loaded in the car with the corn, and no oats were ever delivered to the railway company or to Flournoy.

"5. At the time of this shipment, and theretofore, it was the general custom of trade and carriage in the southeastern and middle States, including Tennessee and Georgia, that when car-load ship-ments of grain, flour, hay, meal, and like merchandise were made to the shipper's order, notify a given party, the order bills of lading issued for such shipments were to be attached to drafts drawn by the shippers on the person named in the bills of lading to be notified, and the bills of lading were transferred to the persons to be notified, and such drafts with such bills of lading attached were forwarded through banks for collection; and that the bills of lading were not to be delivered to the persons to be notified, until the drafts attached thereto are first paid; and that the surrender of the original order bills of lading properly endorsed shall be and is required before the delivery of the property. This custom was known to J. A. Flournoy and to the N., C. & St. L. Railway Com-pany. This custom was followed in the shipment in the case at bar."

*Hardeman, Jones, Park & Johnston* and *Richard Curd,* for plain-tiff in error. *John P. Ross,* contra.