**Mark Owen & Company, Appellant, v. Michigan Central Railroad Company, Appellee.**

**Gen. No. 24,407.**

1. CARRIERS, § 30*—*how interstate liability determined.* The liability of a carrier upon an interstate shipment is to be determined, as to the law, by the Interstate Commerce Act, and the decisions of the United States courts construing it.

2. CARRIERS, § 46*—*how bill of lading construed.* If any doubt arises as to the construction of a bill of lading, the words should be construed most strongly against the carrier.

3. CARRIERS, § 46*—*when bill of lading construed as continuing common-law liability.* Language of uniform bill of lading construed and *held* to mean that the common-law liability as a carrier continues as to goods not removed, for 48 hours after placement of the car containing the goods and notice to the assignee.

Appeal from the Municipal Court of Chicago; the Hon. LEO J. DOYLE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Reversed and judgment here. Opinion filed April 29, 1919.

WILLIAM B. MOULTON and JOSEPH A. BATES, for appellant.

WINSTON, STRAWN & SHAW, for appellee; FRANK H. TOWNER, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Plaintiff appeals from a judgment in favor of defendant, on trial by the court. The facts are stipulated.

The defendant appellee is a common carrier. In September, 1915, at points on its line in the State of Michigan, it received for shipment to Chicago, Illinois, 4 carloads of grapes in baskets. The cars were consigned to plaintiff. Upon arrival, these cars were placed upon a public delivery team track, and plaintiff was notified of their arrival and placement. The shipments were at that time intact. Plaintiff examined the cars and accepted them. It broke the seals upon the cars and began to unload the grapes without any assistance from defendant carrier. The unloading was completed within 48 hours from the receipt of notice, but some time before its completion, 127 baskets of grapes of a conceded value of $23.30 disappeared and were never, in fact, received by the plaintiff consignee. The claim of the plaintiff against the defendant is for the value of these grapes.

The grapes were shipped under a standard bill of lading, and certain rules and regulations of defendant which had been lawfully filed with the Interstate Commerce Commission were in effect and applicable thereto at the time the shipments moved and were delivered. One of these rules provided that the carrier agreed that shipments of green fruit or vegetables would be received at or delivered to the car door without additional charge for loading or unloading. By another rule the consignee was given 48 hours' time to unload shipments, the time to be computed from "The first 7 a. m., after placement on public delivery tracks and after the day on which notice of arrival is sent to consignee."

The bills of lading provided: "The carrier or party in possession of any of the property herein described, shall be liable for any loss thereof or damage thereto, except as hereinafter provided   *   *   *.   For

loss, damage or delay caused by fire occurring after forty-eight hours (exclusive of legal holidays) after notice of the arrival of the property at destination or at port of export (if intended for export) has been duly sent or given, the carrier's liability shall be that of warehouseman only    *    *    *.

"Section 5. Property not removed by the party entitled to receive it within forty-eight hours (exclusive of legal holidays) after notice of its arrival has been duly sent or given, may be kept in car, depot or place of delivery of the carrier or warehouse, subject to a reasonable charge for storage and to carrier's responsibility as warehouseman only, or may be, at the option of the carrier, removed to and stored in a public or licensed warehouse at the cost of the owner, and there held at the owner's risk, and without liability on the part of the carrier, and subject to a lien for all freight and other lawful charges, including a reasonable charge for storage."

We think appellee is right when it says the one question to decide is whether appellee was liable as a warehouseman or common carrier. If it was liable as a common carrier, then plaintiff was entitled to judgment. If its liability was that of a warehouseman, in the absence of proof of negligence, the defendant was entitled to judgment in its favor. *United Metals Selling Co. v. Pryor*, 243 Fed. 91.

What, if any, was defendant's liability must be determined from the bill of lading and rules filed as applicable. The shipment moved in interstate commerce. The law to be applied is, therefore, that of the Interstate Commerce Act, and the decisions of the United States Courts construing that act. That legislation has superseded all State laws and regulations. *Gamble-Robinson Commission Co. v. Union Pac. R. Co.*, 262 Ill. 400.

As is said in *St. Louis, I. M. & S. R. Co. v. Starbird*, 243 U. S. 592: "Since the passage of the Carmack

amendment, the State court must be held to have known that interstate shipments were covered by uniform federal rules which require issuance of a bill of lading, and that that bill of lading contains the entire contract upon which the responsibility of the parties rested. This is the result, not only of our own holdings, but as universally held in the State courts." The parties are held to the responsibility imposed by federal law exclusively. *Southern Ry. Co. v. Prescott,* 240 U. S. 632. The rule by which bills of lading must be interpreted is stated in *Texas & P. R. Co. v. Reiss,* 183 U. S. 621. The court there held that if there be any doubt arising from the language used in the bill of lading, as to its proper meaning or construction, the words should be construed most strongly against the carrier, because its officers or agents prepared the instrument, and it is therefore reasonable and just that its own words should be construed most strongly against itself. Appellant contends that applying this rule to the contract of shipment in this case, the status of appellee remained as a common carrier for 48 hours after the placement of the cars and after notice to the consignee. Appellee contends that the proper construction of the contract is that the term of 48 hours is merely a limitation; that its true meaning is appellee would not be liable, in any event, beyond 48 hours from the time of placement and notice. This evidently was the view of the trial court. It held, at request of defendant, as proposition of law No. 5, "that the action of plaintiff herein in accepting the cars involved in this action and breaking the seals thereon and starting to unload said cars, terminated the defendant's liability as a common carrier, and that thereafter defendant was only liable as a warehouseman."

The language of the bills of lading, we think, precludes the construction given by the court. Section

98    APPELLATE COURTS OF ILLINOIS.

Mark Owen & Co. v. Michigan Central R. Co., 214 Ill. App. 94.

5, by its terms, is limited to "Property not removed." The use of the word "removed" instead of the word "delivered," in view of the previous hopeless conflict in the authorities as to what facts would or would not constitute delivery, was evidently not accidental. We think the plain meaning of the contract is that the common-law liability of the carrier continues for 48 hours after placement and notice with respect to such part of the shipment as has not been removed.

This uniform bill of lading has not been construed by any federal court so far as we are informed. It has been construed by the Supreme Court of Montana in the case of *Gary Bros. & Gaffke Co. v. Chicago, M. & P. S. R. Co.*, 49 Mont. 524, 143 Pac. 955. The shipment there was intrastate and of potatoes. The potatoes froze within 48 hours from placement and notice. The court held that the only thing which could have exonerated the carrier was the removal of the potatoes, saying: "In other words, the contract itself not only fixes the liability of the carrier, but defines the character of the delivery which will suffice to avoid it * * *. Whatever, in the absence of the contract, might have been the effect of the circumstances disclosed by the evidence, there was no removal of the potatoes before they were frozen." In *Rustad v. Great Northern R. Co.*, 122 Minn. 453, 142 N. W. 727, the court, in construing the same bill of lading said: "The shipper gets a somewhat greater liability of the defendant, as an insurer, by the provisions of the shipping bill, for he has the carrier liability for the full period of 48 hours, though the law might have terminated it before."

We think, in view of the words used in the bill of lading, and the rule that the shipping contract is construed most strongly against the carrier, it is reasonable to hold that, unless the fruit were removed from the control of the carrier, its common-law liability would continue for 48 hours after notice of arrival to the consignee. We, therefore, think that the holding as to the

law applicable to the agreed state of facts was incorrect.

The judgment of the Municipal Court will therefore be reversed and judgment entered here in favor of appellant and against appellee for the sum of $23.30, the value of the grapes.

*Reversed and judgment here.*