### LEIGH ELLIS & CO. v. PAYNE, Agent.

#### (District Court, N. D. Georgia. June 5, 1921.)

#### No. 480.

1. **Carriers ⬅160—Limitation in bill of lading valid.**
   A provision in a bill of lading limiting the time of bringing suit for loss or damage to two years and one day after delivery of the property *held* valid and enforceable.

2. **Carriers ⬅160—Statutory extension because of suit dismissed not applicable to limitation in contract with carrier.**
   Park's Ann. Civ. Code Ga. § 4381, providing that a suit in renewal of one dismissed, but which had been brought in time, shall stand on the same footing as to limitations as the original suit, applies only to statutory limitations, and does not extend the time for bringing a suit barred by a limitation in a contract with a carrier.

3. **Carriers ⬅57—Not liable to holder of order bill of lading for shortage in weight of package freight.**
   Under Bills of Lading Act Aug. 29, 1916, § 20 (Comp. St. § 8604jj), where a carrier loads package freight, like cotton in bales, it is required to state in the bill of lading only the number of packages and such marks or discription as will serve to identify them, and a further statement in an order bill for baled cotton of the weight of the shipment is voluntary and gratuitous, and where qualified by the words "subject to correction" does not render the carrier liable to a holder of the bill, under section 22 (section 8604kk), for a shortage in the weight.

At Law. Action by Leigh Ellis & Co. against John Barton Payne, agent. On demurrer to amended petition. Demurrer sustained.

Watkins, Russell & Asbill, of Atlanta, Ga., for plaintiff.

Colquitt & Conyers and Brandon & Hynds, all of Atlanta, Ga., for defendant.

SIBLEY, District Judge. The amended petition, filed January 28, 1921, is admitted by the demurrer as true and makes this case: On March 25, 1918, the Director General of Railroads issued a bill of lading for cotton moving in interstate commerce, "consigned *to order of* Savage Cotton Company, Incorporated. * * * No. of packages, 200. Description of articles and special marks, B/C two hundred, marked M. A. R. S. Car initials, A. C. L. No. 40779 and Wabash No. 71014. Weight (subject to correction) 99,300 lbs."—with freight prepaid in a stated amount. Among the conditions indorsed on the bill and referred to in its face was this:

"Sec. 3. * * * And suits for loss, damage or delay shall be instituted only within two years and one day after delivery of the property, or in case of failure to make delivery then within two years and one day after a reasonable time for delivery has elapsed."

A similar bill was issued for 100 other bales. Savage Cotton Company sold the cotton, indorsed the bills of lading and attached them to a draft on plaintiff, who paid the draft and took up the bills. The 300 bales of cotton were duly delivered, but were found to weigh 26,-839 pounds less than the weights stated in the bills. A claim was made for the shortage, and a suit filed within two years and one day from the delivery, which was dismissed because brought in the wrong venue. Within six months of the dismissal, but more than two years and one day after delivery, this suit was filed in renewal of that.

[1] 1. The suit is barred by the contract limitation. In dealing with a 90-day limitation in a bill of lading for live stock, the Supreme Court, in 1913, said:

"The policy of statutes of limitation is to encourage promptness in the bringing of actions, that the parties shall not suffer by loss of evidence from death or disappearance of witnesses, destruction of documents or failure of memory. But there is nothing in the policy or object of such statutes which forbids the parties to an agreement to provide a shorter period, provided the time is not unreasonably short. That is a question of law for the determination of the court. * * * The provision requiring suits to be brought within ninety days is not unreasonable." M., K. & T. Railroad v. Harriman, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690.

The ruling was repeated in T. & P. Railroad Co. v. Leatherwood, 250 U. S. 479, 39 Sup. Ct. 517, 63 L. Ed. 1096, as to a six-months limitation in a bill of lading issued before the Act of March 4, 1915. 38 Stat. 1196. That act provided:

"It shall be unlawful for any * * * common carrier to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of claims than ninety days and for the filing of claims a shorter period than four months and for the institution of suits than two years." Comp. St. § 8604a.

This act plainly recognizes the propriety in bills of lading of contract limitations for the bringing of suits, and names two years as a reasonable period to be stipulated. There is nothing in the Bills of Lading Act of August 29, 1916, 39 Stat. 538 (Comp. St. §§ 8604aaa–8604w), to the contrary.

The ruling of the Interstate Commerce Commission, in Decker & Sons v. Director General, 55 Interst. Com. R. 453, is not controlling here. Its conclusion that the voluntary payment of meritorious claims, duly presented and held up without action for more than two years, was not improper, did not necessarily require a consideration of the question whether a suit could be then maintained. So its conclusion that *for the future* bills of lading ought to date the limitation on suits from the *rejection of the claim,* though evidently a finding that the dating of it from the time of delivery of the shipment was unreasonable in a sense, did not annul the rights of parties under contracts made in the past. Their rights are rather controlled by the decisions and statutes referred to above.

[2] 2. The statutes of Georgia (Park's Code, § 4381), as of many other states, provide, as an exception to the legal periods of limitation, that a suit in renewal of one dismissed, but which had been brought in time, should stand on the same footing as to limitation as the original

suit. But the plaintiff here is not met with any statute of limitations, state or federal, but only with a contract limitation. The exception of the Georgia statute of limitations is not imported as an exception into the absolute stipulation of a contract. It has been so ruled repeatedly by the Supreme Court of Georgia; Melson v. Phenix Insurance Co., 97 Ga. 722, 25 S. E. 189; Gross v. Globe Insurance Co., 140 Ga. 531, 79 S. E. 138. In Riddlesbarger v. Hartford Ins. Co., 7 Wall. 386, 391 (19 L. Ed. 257) it is declared:

"The action mentioned in the condition, which must be commenced in the twelve months, is the one which is prosecuted to judgment. The failure of a previous action for any cause cannot alter the case although such previous action was commenced within the period prescribed."

The plaintiff, therefore, derives nothing from his previous ineffectual suit.

3. It is said that the contract limits only suits for the loss of or damage to goods shipped and does not cover the statutory liability here involved, and reference is made to the language of section 1 of the conditions indorsed on the bill. Whatever may be the scope of section 1, the language of section 3, "Suits for loss, damage or delay," is broad enough to include all suits for damages arising out of the contract of shipment, including the damage caused the bona fide holder of an order bill by its misrecitals.

[3] 4. The case also fails on the merits. It is not claimed that the loss in weight was due to any injury to the cotton or to the destruction of any part of it, but the liability asserted is (petition, par. 15):

"That by receiving and issuing bills of lading for a total of 149,025 pounds of cotton, when in truth and in fact the cotton weighed 122,136 pounds, said railroad and the Director General and the United States became bound to the owner and holder of said bills of lading to deliver the amounts of cotton receipted for, which amounts were stated in the two bills of lading hereinbefore referred to."

The claim is based on that part of section 22 of the Bills of Lading Act which relates to "order bills," such as these are:

"Sec. 22. That if a bill of lading has been issued by a carrier or on his behalf by an agent or employee the scope of whose actual or apparent authority includes the receiving of goods and issuing bills of lading * * * for transportation in commerce among the several states and with foreign nations, the carrier shall be liable to * * * (b) the holder of an order bill, who has given value in good faith, relying upon the description therein of the goods, for damages caused by the non-receipt by the carrier of all or part of the goods or their failure to correspond with the description thereof in the bill at the time of its issue."

It is said the damage here was caused by (1) "the nonreceipt by the carrier of part of the goods," in that 26,000 less pounds of cotton were received by it than were called for by the bill of lading; and (2) by the failure of the sales to "correspond with the description thereof in the bill at the time of its issuance" in the matter of their aggregate weight. It will be noted that the statement of the bills here as to weight is not absolute or positive, but the weight is stated "subject to correction," indicating that it may not be exact and is not represented to be. Now

the liability declared in section 22 must be considered in the light of sections 20 and 21, which define the duties of the carrier in making the bill of lading and the things that must be ascertained by him and stated in the bill. These sections divide goods delivered for shipment into, first, those loaded by the carrier, dealt with in section 20; and, second, freight loaded by the shipper, dealt with in section 21. Each of these classes is again divided into (a) package freight; and (b) bulk freight. As to goods loaded by the shipper, whether package freight or bulk freight, section 22 permits the carrier to describe the goods in the bill of lading merely by the marks on the packages, or to state that the contents and condition of packages are unknown or are said to be of a stated kind or quality, or that they are "shipper's weight, load and count," and if the statements are true they impose no liability on the carrier for failure of the goods to correspond in kind or quality or condition to that indicated by the marks or statements of the consignor; but, if the shipper of *bulk* freight has available weighing facilities, the carrier on written request and reasonable opportunity must ascertain the kind and quantity, and such words as "shipper's weight" inserted in the bill will be treated as void.

In the case at bar there is nothing to indicate that the cotton was loaded by the shipper, so we turn to section 20, dealing with shipments loaded by the carrier:

"Sec. 20. When goods are loaded by a carrier such carrier *shall count* the packages of goods, *if package freight*, and ascertain the kind and quantity *if bulk freight*, and such carrier shall not, in such cases, insert in the bill of lading or in any notice, receipt, contract, rule, regulation, or tariff, 'shipper's weight, load and count' or other words of like import, indicating that the goods were loaded by the shipper and the description made by him or in case of bulk freight and freight not concealed by packages the description made by him. If so inserted contrary to the provisions of this section, said words shall be treated as null and void and as if not inserted therein."

This section makes it the duty of the carrier in loading *package freight* to *count the packages,* but lays no duty on him to ascertain the kind, quantity, or weight. In loading bulk freight he must ascertain the kind and quantity. The fair implication is that he must state in the bill the number of packages so counted, and the kind and quantity of bulk freight so ascertained. Section 22 imposes a liability for failure in accuracy of the statement so made in an order bill, making them in effect warranties. Section 20 forbids any qualification of the statements as to these matters so required to be made; such qualifications being "as if not inserted therein."

Cotton in permanent bales is package freight. The bales are capable of marking and identification as are other packages. The sole duty laid on the carrier by section 20, in loading the bales, is to count them, and he need state in the bill of lading only the number of packages and such marks or description as will serve to identify the packages meant. Not being bulk freight in the meaning of the section, kind and quantity need not be ascertained and stated. If the description in the bill be enlarged by stating the nature of the contents of the packages, or the weight of them, it is voluntary and gratuitous, and the statement may

be guarded and qualified as the carrier sees fit. Since freight is based on weight, the carrier will generally ascertain the weight also in the case of package freight, and may conveniently state it in the bill as the basis for the freight charge. In doing so the statement may be made as "subject to correction," as in the case at bar; for the prohibition of the statute against a qualification of the statement of the quantity applies only to bulk freight. If the carrier should, in an order bill, state more than the statute requires as to kind or description or quantity, it may be that the liability imposed by section 22 to respond for damage caused would apply. In some state jurisdictions such liability is recognized independently of statute. Thus, where the packages were stated to be "cotton," there was a liability when they were only "motes." C., R. I. & P. Railroad v. Cleveland, 61 Okl. 64, 160 Pac. 328. So where 100 bales were stated to have been shipped, when in fact there were only 96. L. & N. Railroad v. Pferdmenges, 8 Ga. App. 81, 68 S. E. 617. But the ground of liability disappears when the statement is so qualified as to indicate that it is not made absolutely. N., C. & St. L. v. Flournoy, 139 Ga. 582, 77 S. E. 797. The statement here as to the weight of the bales, although it might have imposed liability, if made absolutely, was so qualified as to indicate that it was to be corrected, and the qualification was not forbidden by law. It is appreciated that since cotton is not bought and sold by the package, but by the pound, this conclusion militates greatly against the attainment of one of the aims of the Bills of Lading Act; but the liability cannot be extended beyond the plain words of the act.

The demurrer will be sustained.

---

⬦⟺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes