CHICAGO—FIRST DISTRICT—JUNE, 1923.    33

Louisiana Lumber Co. v. Mich. Cent. R. Co., 230 Ill. App. 33.

## Louisiana Lumber Company, Appellee, v. Michigan Central Railroad Company, Appellant.

### Gen. No. 28,205.

1. CARRIERS—*period of limitations prescribed by bill of lading not suspended by federal control of railroads.* The provisions of the Transportation Act of February 28, 1920, sec. 206 (f), Federal Statute Supplement 1920, p. 79, that the period of federal control shall not be computed as a part of the period of limitations in actions against carriers, apply only to limitations prescribed by statutes and do not override a limitation contained in a bill of lading fixing the time for suit for damages for wrongful delivery of a consignment of freight to two years and one day after delivery of the goods.

2. COURTS—*construction of federal statute by federal courts controlling on state court.* The construction given to the Transportation Act of February 28, 1920, sec. 206 (f), by the federal courts on a question squarely presented and passed upon will be followed by the courts of Illinois when the same question is squarely presented for decision.

Appeal by defendant from the Municipal Court of Chicago; the Hon. WELLS M. COOK, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1922. Reversed with judgment of *nil capiat.* Opinion filed June 25, 1923.

WINSTON, STRAWN & SHAW, for appellant; FRANK H. TOWNER, of counsel.

WALTER, BURCHMORE, COLLIN & BELNAP, for appellee; NUEL D. BELNAP, of counsel.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

Plaintiff, bringing suit for the value of three carloads of lumber which it is claimed were wrongfully delivered by defendant, upon trial by the court had judgment for $1,053.90, from which defendant appeals.

The lumber was shipped October 9, 1917, by the Weston Lumber Company at Ansley, Mississippi, and

34    APPELLATE COURTS OF ILLINOIS.

Louisiana Lumber Co. v. Mich. Cent. R. Co., 230 Ill. App. 33.

consigned to plaintiff at Detroit, Michigan. October 12 plaintiff wrote asking defendant upon arrival to "notify Southwestern Lumber Company, Cincinnati, Ohio. They hold the bill of lading, and upon arrival of car they will give you disposition upon surrender of same." The original bills of lading were attached to drafts drawn on the Southwestern Lumber Company, which were returned unpaid accompanied by the bills of lading. When the cars of lumber arrived at Detroit over defendant's lines, it delivered them to the Solvay Process Company on the order of the Southwestern Lumber Company without requiring the surrender of the original bills of lading.

It was stipulated upon the trial that the bills of lading were at the time of the respective shipments incorporated in the tariffs of defendant then on file with the Interstate Commerce Commission, and that these tariffs were then in force; that by agreeing to the provisions and limitations contained in each bill of lading the transportation of each of said cars of lumber was secured at a rate of freight ten per cent less than it would have been had the shipments not been made subject to the provisions and conditions of each of said bills of lading; that the deliveries were made October 15, 1917, and this suit was started March 8, 1920; that on each of the bills of lading it was provided:

"Suits for loss, damage or delay shall be instituted only within two years and one day after delivery of the property, or, in case of failure to make delivery, then within two years and one day after a reasonable time for delivery has elapsed."

This action was not brought within two years and one day after deliveries. It was also stipulated that the period from December 28, 1917, up to and including February 29, 1920, was' the period known as federal control, during which time the railroad owned by defendant was controlled and operated by the government of the United States.

Defendant says that the failure of plaintiff to start its suit within two years and one day after the deliveries of the shipments bars its recovery. If the period of limitation contained in the bills of lading is operative, this defense is good.

Plaintiff says this limitation is overridden by the provisions of the Transportation Act of February 28, 1920, sec. 206 (f), Federal Statute Supplement 1920, p. 79, as follows:

"The period of Federal control shall not be computed as a part of the periods of limitation in actions against carriers or in claims for reparation to the Commission for causes of action arising prior to Federal control."

Eliminating the period between December 28, 1917, and February 29, 1920, the period of federal control, from the period between the day of delivery of the instant shipment and the day when the suit was started, the action was brought within two years and one day after delivery.

Do "the periods of limitation" mentioned in this provision mean any periods of limitation whether created by statute or arising from contract in a bill of lading, as claimed by plaintiff, or does the provision relate only to periods of limitation prescribed by state or federal statutes and not to those created by the provisions of a bill of lading?

This question has been squarely presented and passed upon in the Federal Court of Appeals for the Second Circuit in *New York Cent. R. Co. v. Lazarus*, 278 Fed. 900. It was there held that: "Congress did not intend section 206 (f) to apply to provisions in tariff schedules which the common carrier is required to file with the Interstate Commerce Commission." If we hold in accordance with this decision, the action of plaintiff in the instant case is barred.

Counsel for plaintiff very forcefully criticises the reasoning in the opinion in the *Lazarus* case and urges this court to follow what is thought to be a more com-

36 APPELLATE COURTS OF ILLINOIS.

Louisiana Lumber Co. v. Mich. Cent. R. Co., 230 Ill. App. 33.

prehensive and logical interpretation of the statute by making it apply to all periods of limitation, whether statutory or contractual. We are not inclined to dis-- cuss what might be our conclusion were this a case without precedent, for the reason that this court is committed to the rule that where a federal court has construed a federal statute we will follow that de- cision. *Mark Owen & Co. v. Michigan Cent. R. Co.,* 214 Ill. App. 94; *Simpson v. Grand Trunk Western Ry. Co.,* 210 Ill. App. 269; *Elgin, J. & E. Ry. Co. v. Rockwell Lime Co.,* 213 Ill. App. 25.

Other cases following the decision in the *Lazarus* case are: *Thomas Canning Co. v. Southern Pac. Co.,* 219 Mich. 388; also *Mallory v. Barrett,* 118 N. Y. Misc. 749, 194 N. Y. Supp. 677. There is also some support for the *Lazarus* decision in the opinion of the Supreme Court of the United States in *Leigh Ellis & Co. v. Davis,* 260 U. S. 682, decided January 29, 1923, the court saying that it cannot be supposed that Congress intended by the Transportation Act of February, 1920, to invalidate existing contracts good when made.

We do not read the opinions in *Leigh Ellis & Co. v. Payne,* 274 Fed. 443, 276 Fed. 400, as holding contrary to the *Lazarus* case. In the former case the suit was against the Director General of Railroads and the cause of action arose during the period of federal control, so the provision in question was not involved.

Propositions of law definitely presenting this ques- tion were submitted to the court. The proposition submitted by defendant that the action was barred was refused, while the proposition submitted by the plain- tiff to the contrary was held. We are of the opinion that the trial court was in error in these rulings and that the action was barred by the period of limitation stated in the bills of lading.

What we have heretofore said disposes of the case, but two other alleged errors are presented. It is said that plaintiff's recovery in any event was limited to

the reasonable market value of the lumber at destination on the day of delivery and not to the bona fide invoice price which was made the basis of loss by the terms of the bill of lading. *Chicago, M. & St. P. Ry. Co. v. McCaull-Dinsmore Co.*, 253 U. S. 97. This case seems to decide only that this provision is invalid when it prevents the recovery of the full actual loss, but that otherwise it is a stipulation offering the most convenient way of finding the value, and will be enforced except where it is shown to result in actual loss. We are in agreement with the ruling of the trial court on this point.

It is next urged that there was no obligation upon defendant to require the surrender of the original bills of lading prior to delivery, and that the deliveries made without requiring their surrender were proper. We cannot so hold. The letters to defendant authorized the delivery of the shipments only upon surrender of the bills of lading. The language admits of no reasonable misunderstanding. Whether or not the bills were "straight" or "order" bills, or that defendant had no knowledge that drafts were attached to them, is not controlling. It is the duty of the carrier to deliver the shipment to the party designated, upon the conditions named, and delivery in violation of the terms imposed will make the carrier liable. 10 Corpus Juris, pp. 257, 262.

We have noted the last two points only to indicate briefly our views thereon. For the reasons first above stated the judgment is reversed and, as the action is barred, judgment of *nil capiat* is entered in this court.

*Reversed with judgment of nil capiat.*

MATCHETT and JOHNSTON, JJ., concur.