NATIONAL BANK OF WILKES *v.* MARYLAND CASUALTY COMPANY; *et vice versa.*

738

Nos. 6414, 6415. January 16, 1929. Rehearing denied February 18, 1929.

*C. E. Sutton,* for plaintiff in error. *Earle Norman,* contra.

*W. A. Slaton,* for parties interested, not of record.

HINES, J. (After stating the foregoing facts.)

Did the court err in overruling certain grounds of the demurrer filed by the bank to the answer of the surety company to its intervention? The Planters Warehouse Company applied for a license to conduct a warehouse in accordance with the act of Congress of August 11, 1916, and in order to obtain said license it executed and filed with the Secretary of Agriculture a bond to the United States, with the Maryland Casualty Company as security, to secure the faithful performance of its obligations as a warehouseman under the laws of this State, as well as under the terms of said act, and the rules and regulations prescribed thereunder, and such additional obligations of a warehouseman as may be assumed by it under contracts with respective depositors of agricultural products in such warehouse. This bond was in accordance with the terms of the above act. 8 U. S. Comp. St. § 8747 3/4c. In its intervention the bank alleged that said warehouse company, on November 1, 1926, issued to R. H. Pharr its receipts purporting to be for 100 bales of cotton stored by him in its warehouse; to E. A. Barnett its receipts purporting to be for 85 bales of cotton stored by him in its warehouse; and to L. D. Faver its receipts

purporting to be for 100 bales of cotton stored by him in its warehouse. On the same day each of said parties executed notes for the respective sums of $5,000, $4,000, and $5,000, payable to order of the warehouse company. Each of said makers indorsed and attached to his note his receipts so given for said cotton. On the same day the warehouse company indorsed and discounted said notes, with the attached receipts, with the bank, and received the aggregate sum thereon of $14,000. The bank in its intervention alleged that it took said receipts in good faith and without notice of any defense thereto or any infirmities; that it had no knowledge that said receipts were fraudulent because there was no cotton behind them, or that the cotton represented by them had been converted or was not in existence; that it relied upon said receipts as importing a genuine transaction of the nature described therein, and acted in good faith in discounting the notes thereby secured; that the warehouse company had converted said cotton, and failed to deliver it to the intervenor as it was obligated to do under said receipts; and that the failure of the warehouse company to deliver the cotton represented by said receipts amounted to a breach of said bond, which entitled it to recover from the warehouse company the value of said cotton or so much thereof as was necessary to meet the amounts due it on said notes so discounted by it. In answer to the intervention of the bank the surety company alleged that said receipts were fictitious and fraudulent; that the persons to whom they were issued had not deposited in the warehouse of said company any cotton for which said receipts were given; that there was no cotton behind said receipts; that the bank had knowledge of this fact; and that for this reason the surety was not liable to the bank.

In these circumstances we do not think that the surety company was liable to the bank upon said receipts. A warehouse receipt is a mere symbol of property; and when it passes from the person to whom it is issued to another, it is only symbolic of the property it represents. If it represents no property, its holder has nothing but a scrap of paper. That is the general character of a warehouse receipt, just as that of a bill of lading. *Planters' Rice Mill Co.* v. *Merchants' National Bank of Savannah,* 78 *Ga.* 574, 582 (3 S. E. 327); *Raleigh & Gaston R. Co.* v. *Lowe,* 101 *Ga.* 320, 329 (28 S. E. 867); *Continental Trust Co.* v. *Bank of Harrison,*

162 *Ga.* 758, 760 (134 S. E. 775, 50 A. L. R. 412). By the act of
Congress of 1916 it is provided that "No receipt shall be issued
except for agricultural products actually stored in the warehouse
at the time of the issuance thereof." 7 U. S. C. A. 104, § 259.
Under this act, if warehouse receipts are issued by a warehouse
company for cotton not in storage in its warehouse, the transac-
tion is illegal, and the party to whom they are issued has no valid
claim which can be enforced against the warehouse company. It
is unnecessary for us in this case to decide what would be the
rights of an innocent indorsee of such receipts, for value, and with-
out notice of any infirmities therein or defenses thereto against
parties to whom they were issued, under our bonded-public ware-
house act of 1899, now embraced in the Civil Code (1910), §§
2913, 2914, the first of which sections in part provides that every
public bonded warehouseman shall give to each person depositing
property with him for storage a receipt therefor, which shall be
negotiable in form, unless requested by the depositor to give him
a non-negotiable receipt; and the second of which provides that the
title to cotton or other goods stored in a bonded public warehouse
shall pass to the purchaser or pledgee thereof by the delivery to
him of the warehouseman's receipt therefor, with an indorsement
thereon to such purchaser or pledgee, signed by the person to
whom such receipt was originally given, or by the indorsee thereof.
Before the passage of the act of 1899, this court held, in *Planters'
Rice Mill Co.* v. *Merchants' Bank,* supra, that "Warehouse receipts,
pure and simple, with only the incidents annexed to them by law,
and none superadded by special contract, conduct, or representa-
tion, are no more obligatory in the hands of bona fide holders for
value than in the hands of the original bailor of the property
stored." See also *First National Bank* v. *Nelson,* 38 *Ga.* 391 (95
Am. D. 400) ; *National Bank* v. *Graniteville Manufacturing Co.,*
79 *Ga.* 22, 25 (3 S. E. 411) ; *Commercial Bank* v. *Flowers,* 116 *Ga.*
219 (42 S. E. 474). It is unnecessary to decide this question, for
the reason that the answer of the surety company to the interven-
tion of the bank denies that the bank was an innocent indorsee of
these receipts for value, without notice of the infirmities in or
defenses to the receipts against the indorsers.

Furthermore, if this transaction was a mere scheme by which the
warehouse company undertook to obtain from the bank funds for

its own use, by pledging cotton which it did not own or on which it had no lien for advances made to depositors of such cotton, and which the parties to whom the receipts were issued did not own, or in which they did not have any interest, it was not a genuine warehouse transaction; and if the bank knew the character of the transaction at the time it discounted the notes secured by the warehouse receipts, the surety on the bond of the warehouse company would not be liable to the bank on the receipts so issued and used. If, however, these receipts were issued in due course of business for the express purpose of being pledged as security to obtain money, and the warehouseman discounted the notes of the holders of these receipts indorsed and attached thereto as security, and obtained money from the bank on said notes and receipts, the bank, acting in good faith and without notice, would be entitled to stand on the terms of the pledged receipts as importing a genuine business transaction of the nature described in these instruments. In these circumstances, though no goods in fact had been received for storage, the warehouse company would be liable to the bank. *Planters' Rice Mill Co.* v. *Merchants' Bank*, supra; *Citizens Bank* v. *Union Warehouse Co.*, 157 *Ga.* 434 (122 S. E. 327); *Maryland Casualty Co.* v. *Washington Loan & Banking Co.*, 167 *Ga.* 354 (145 S. E. 761). Where the warehouseman gives to a party who holds his receipts a false credit, he will not be suffered to contradict a statement which he has made in the receipt, so as to injure a party who has been misled by it. *American National Bank* v. *Georgia R. Co.*, 96 *Ga.* 665 (23 S. E. 898, 51 Am. St. R. 155). The case of the bank, under the allegations of the answer, does not fall within the principle just announced. But it is insisted by the bank that the principal and surety are estopped from denying that the warehouse receipts were given for cotton actually stored in the warehouse of the principal; and to support this position counsel for the bank cite *N., C. & St. L. Ry.* v. *Flournoy*, 139 *Ga.* 582 (77 S. E. 797). That case was decided on a bill of lading, and the carrier's conduct raised it from a mere symbol to the dignity of a security. Moreover, no estoppel arises where the party seeking to set it up knew all the facts. So we are of the opinion that, under the principles above stated, the answer of the surety company to the intervention of the bank set up a good defense, and that the trial judge did not err in overruling the demurrer of the bank.

■ We now deal with the grounds of the motion for new trial. The court charged the jury as follows: "I read you section 52 of the Georgia Laws of 1924, page 137: A holder in due course is a holder who has taken the instrument under the following conditions: (1) that it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." Immediately following the above instruction the court charged the jury as follows: "Now, gentlemen, I charge you this principle of law also, section 55 of the same act: The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument or any signature thereto by fraud, duress, or force, and fear, or other unlawful means or for an illegal consideration, or when he negotiates it in breach of faith or under such circumstances as amount to a fraud." In its motion for new trial the bank excepts to the charge just quoted, and says, that it was error because this section of the negotiable instruments law was immaterial, as the makers of the notes were themselves offering no offense thereto, and they are the only parties who could take advantage of the principle of law set out in said section. These sections of the negotiable instruments law are not strictly applicable to the rights of the bank and the liability of the surety company under the warehouse receipts involved in this case. This act is a legislative declaration of the rules of the law merchant touching commercial paper. It "does not apply to or affect the rights or liabilities of persons on paper that is not within its meaning negotiable." 3 R. C. L. 853, § 32. An instrument to be negotiable under this act "must contain an unconditional promise or order to pay a sum certain in money, provided that a promissory note may be made payable in cotton or other articles of value." Acts 1924, p. 126; 12 Park's Code Supp. 1926, § 4269 (1).

It follows that cotton warehouse receipts are not negotiable instruments within the meaning of that act. They do not "contain an unconditional promise or order to pay a sum certain in money." This holding does not conflict with the ruling in headnote 1 (b) of *Maryland Casualty Co.* v. *Washington Loan & Banking Co.,*

supra, and in the corresponding division of the opinion. The question now involved was not passed on by this court in that case. The question decided in that case was whether warehouse receipts issued by a bonded warehouse company for its own cotton, wherein the company acknowledged receipt from itself of its own cotton, and undertook to deliver the same to its order, were valid and enforceable contracts. We held that they were valid contracts, under the general law applicable thereto, under our bonded-public warehouse act, and under our negotiable instruments law. In other words, we held that such cotton warehouse receipts were not unlawful under the provisions of our negotiable instruments law, for the reason that that law specially provides that negotiable instruments falling thereunder can be made payable to the order of their maker. What we meant to hold was that if cotton warehouse receipts came under that act, they were expressly negotiable by its terms; but we made no holding that they were instruments made negotiable by that act. Our ruling in that case should be construed in connection with the question discussed under the facts affecting that question, and in view of this explanation which makes clear what we intended to hold and did hold in that decision.

(a) While we think the charge complained of was not pertinent to the issue involved in the instant case, we do not think that it requires the grant of a new trial. The court expressly instructed the jury that the sole issue for their determination was whether the bank was the innocent indorsee of these receipts for value and without notice of any infirmities therein or defenses thereto by the surety against the parties to whom these receipts were issued by the warehouse company; and further, as we shall undertake to show, the court gave the jury proper instructions for their guidance in determining this issue. This instruction was not calculated to mislead the jury; and there was no such conflict between the instruction complained of and the correct instructions given by the court to the jury for their guidance in determining the true issue in this case as imposed on them the burden of determining which of two conflicting principles should be followed by them in determining the issue involved.

(b) An erroneous charge touching a matter wholly immaterial to the merits of the controversy is not cause for new trial, unless it misleads the jury. *DeSaulles* v. *Leake, 56 Ga. 365; Boyd* v.

*England,* 56 *Ga.* 598. An erroneous charge which manifestly did not mislead the jury may be treated as harmless. *Chattanooga, Rome &c. R. Co.* v. *Owen,* 90 *Ga.* 265 (15 S. E. 853).

(c) The court charged the jury the principle embraced in section 4530 of the Civil Code of 1910, as follows: "Notice sufficient to excite attention or put a party on inquiry is notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, is equivalent to knowledge, in fixing the rights of parties." Movant excepts to this charge, upon the grounds that the Georgia negotiable instruments act revoked all prior laws in connection with negotiable instruments in this State; that section 56 of said act states the correct law applicable in this case, that is, that a person taking a negotiable instrument must have actual notice of the infirmity or defect, or notice of such facts that his action in taking the instrument amounted to bad faith; and that in charging the above section of the Code the court put upon the plaintiff a greater burden than is imposed upon him under section 56 of the above act. The reply to this contention is that section 56 is applicable only to the instruments defined in the first section of the act, and does not embrace other instruments which are negotiable by another statute or under the principles of the general law. It follows that section 4530 of the Code was not superseded as to negotiable instruments not dealt with in our negotiable instruments law. *Maryland Casualty Co.* v. *Johnson Co.,* 167 *Ga.* 365 (145 S. E. 766). The court did not err in giving in charge to the jury the principle embraced in the above section of the Code.

(d) The trial judge gave this instruction to the jury: "I charge you that the Maryland Casualty Company would be estopped from coming in and claiming that the receipts that were issued in this case were fraudulent. And in that connection I read you this: That when the warehouse issues a receipt and puts the same in circulation, that it can not be heard to say that it had no title to the property for which the receipt was given, and no right to issue the receipt. I further charge you that it would be of no concern to you whether the warehouse had the right to issue receipts against the cotton of other people. That is not for your consideration; for when the receipt is issued, the presumption of law is that it was good. The sole question for your decision is whether the

bank took the receipt in good faith." After giving the above instruction, the court charged the jury as follows: "The Maryland Casualty Company is estopped from raising the question of fraud, as to whether or not the receipts issued in this case were fraudulent; but I charge you, gentlemen, that if you believe that the National Bank of Wilkes had knowledge of the fact that those receipts were fraudulent at the time they were issued, if they were fraudulent, and at the time of the transfer to them, or if they had notice sufficient to excite attention to put a party on inquiry, and that it was afterwards found and discovered that these receipts were fraudulent, that that would be notice to the National Bank of Wilkes. As already explained to you, ignorance of a fact, due to negligence, is equivalent to knowledge in fixing the rights of the parties." Movant excepts to the last instruction, upon the ground that the sole question involved in the case is whether or not the National Bank of Wilkes was the holder of the instruments sued on in due course, and that the principles above charged were directly opposed to each other, and the last instruction was error because it permitted the jury to consider evidence as to whether or not the receipts were fraudulent. Movant further excepts on the ground that the instruction was confusing, and because the court repeated the same error in a similar instruction given to the jury. This assignment of error is without merit. Fairly construed, the trial judge instructed the jury that when the warehouse company issued these receipts it would be presumed that they represented cotton actually stored with it, and that the surety company would be estopped from attacking them as spurious and fraudulent, unless the bank knew at the time it took these receipts that there was no cotton behind them. In view of what we have said in the first division of this opinion, the instructions complained of were not erroneous for any of the reasons assigned.

(e) The court charged the jury as follows: "On the other hand, if you believe that these receipts were fraudulent or fictitious as contended for, and that the National Bank of Wilkes had notice of the fact that they were false or fictitious, or if they were in possession of such facts and circumstances as would give them notice or such notice as would put a prudent man on inquiry as to whether or not they were fictitious or fraudulent, why then in that event I charge you that you would be authorized to find in favor of the

Casualty Company." The court further charged in substance the principle embraced in section 4291 of the Civil Code. Movant excepts to these instructions upon the ground that said section of the Code was superseded by section 56 of our negotiable instruments law. We do not think that this section of the Code has been superseded as to instruments now negotiable, but not negotiable by the law merchant. So we are of the opinion that the instructions complained of were not erroneous, under the facts of this case, upon the ground that these instructions were inapplicable since the passage of our negotiable instruments law. Whether these instructions would be applicable to instruments coming within the meaning of that law is not now for decision.

(f) After considering the case for some time, the jury was brought into the court-room in order to determine whether or not they were likely to agree upon a verdict. The court inquired of the jury if they had agreed on a verdict. The foreman replied that they had not. The court then inquired whether the inability of the jury to reach a verdict was based upon a question of law or a question of evidence. The foreman replied that he hardly knew, but he reckoned that it was a question of law. The foreman then stated that the jury wanted to know if their verdict, if rendered in favor of the surety company, would release its bond entirely, or just in this case. The court then gave to the jury this instruction: "I charge you that if you should find in favor of the Maryland Casualty Company in this particular case, that would not discharge the bond as to any other claims that might be contended for payment thereunder; and in that connection I charge you that each of those claims have to stand upon their own merits. As to whether or not any other cases would be released from the bond, would be a question yet to be determined by the court and a jury." Counsel for the bank made this statement to the court: "I think the jury should be instructed that in this case they have no concern with any other case." Thereupon the court instructed the jury as follows: "I charge you here that you would not be concerned with any other claim that might be brought against the Casualty Company. I charge you further, gentlemen, as I have already stated to you, that if you should find in favor of Maryland Casualty Company in this case, it would not itself release the bondsman from liability on its other claims, in case the validity

of those claims was sufficiently established." Movant contends that the court erred in making to the jury the statement last above quoted; and further alleges that the request of the foreman of the jury was improper, and that the court should have refused to answer it, and that, though the court instructed the jury that they should only consider this case, this request did not have the effect of correcting the answer already given by the court to the question of the foreman. This assignment of error is without merit.

(*g*) In the 6th ground of the motion for new trial the bank alleges that the court erred in not giving in charge to the jury the correct principle of law in regard to what constitutes a holder for value, and seems to contend that section 26 of our negotiable instruments law defines the correct principle applicable in this case. As the warehouse receipts involved in this case are not negotiable instruments under the above law, the 26th section thereof is not applicable, and this assignment of error is without merit.

■ It is insisted by counsel for the bank that the verdict and decree in this case are without evidence to support them. We have set out in the statement of facts in extenso the substance of the only evidence introduced on the trial of this case, and that evidence is fully sufficient to sustain the verdict and the decree rendered by the court. In the first place, the jury was authorized to find that these receipts were fraudulent, because issued to parties who did not have on storage with the warehouse company cotton for which the receipts were issued. In the second place, the evidence does not sustain the contention of the bank that the warehouse company had made advances to the owners of the particular cotton embraced in these receipts, and that in consequence of such advances the company had the right to treat the cotton for which the receipts were given as its property, which it could pledge as security for accommodation notes given by its directors to the bank and represented by receipts given by the company to the makers of such notes. The jury was authorized to find that the transaction was one in which these receipts, with no cotton behind them, were issued to the directors of the warehouse company, who were liable to the bank on papers made or indorsed by them, and to relieve such directors of liability by putting it upon the shoulders of the insurance company. The jury was further authorized to find that the bank had knowledge of the facts and circumstances

under which these fictitious receipts were issued. In such circumstances it would be a gross injustice to hold the surety company liable to the bank for the value of the cotton specified in these receipts. Under the evidence the finding. in favor of the surety company was authorized, if not demanded, by the evidence.

■ The court did not err in entering a final decree in the case before the final determination of the motion for new trial filed by the bank. The grant of a new trial would have had the effect of vacating the decree. The overruling of the motion for new trial has the effect of letting this decree stand.

Having reached the conclusion that the judgment in the main bill of exceptions should be affirmed, we dismiss the cross-bill.

*Judgment on the main bill of exceptions affirmed; cross-bill dismissed. All the Justices concur.*

RUSSELL, C. J. I dissent from the statement in paragraph (*f*) of headnote 2, and the corresponding division of the opinion, that it was not error for the judge to instruct the jury that if they found in favor of the casualty company, "it would not release the company on other claims, in case their validity was sufficiently established." Under the law of this State a jury exercises its high and solemn prerogative of ascertaining the facts in each particular case. It is the exclusive prerogative of the jurors to determine the truth from the evidence submitted in the case, upon which, if their verdict is authorized, the court will enter judgment. Every juror takes an oath that he will a true verdict give according to the evidence and the law as given in charge by the court. These are the only two things he is permitted to consider. He has no concern with what may be the future and final disposition as to the rights of the parties in the case before him, and much less has he any right to consider what may be the result of his verdict in any case or other cases than the one on trial. Even the judge himself has no right to be affected, in his charge or rulings in the case on trial before him, by what may be the result in any other case or cases. It is a matter entirely dehors the record, utterly irrelevant, and can but sanction the juror to consider other similar matters without his knowledge which should not be considered because not in evidence. In the circumstances stated in this ground of the motion for a new trial, a judge should not answer such questions as that propounded in the present instance, but rather should call

the attention of the jury to their oath which precludes the jurors from considering anything except the evidence and the charge of the court. It is true that the judge in the present case instructed the jury that they would not be concerned with any other claim that might be brought against the casualty company. Had the instruction stopped there, this might have been sufficient to turn the attention of the jury to the principle of law embodied in the oath they had taken; but this part of the instruction was immediately followed by the instruction which, in my opinion, was improper because illegal, and no man can tell what effect it might have had in a close and doubtful case. While I am clear that any statement from the bench as to the result of any other case than the case on trial is error, I am not convinced that under the facts of this case the error was harmful to the plaintiff in error; and so I concur in the judgment of affirmance.